David **MILLER**, Plaintiff-Appellee,

v.

Griffin B. **BELL**, Attorney General of the United States, William H. Webster, Director of the Federal Bureau of Investigation, and United States Department of Justice, Defendants-Appellants.

No. 79–1210.

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 1981.
Decided Oct. 1, 1981.

Mark N. Mutterperl, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for defendants-appellants.

Robert M. Hodge, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and LARSON,* Senior District Judge.

---

* Earl R. Larson, Senior Judge of the District of Minnesota, is sitting by designation.

PER CURIAM.

This appeal arises under the Freedom of Information Act, 5 U.S.C. § 552. The plaintiff David Miller (Miller) requested the Federal Bureau of Investigation (the FBI or the Bureau) and the Justice Department to provide him with all documents relating to his complaint to the FBI that someone had wiretapped his telephone.[1] The FBI released some 54 pages of material to the plaintiff, but, pursuant to exemptions 7(C) and (D) of the Act, §§ 552(b)(7)(C) & (D), the Bureau excised the names of persons interviewed in connection with the investigation, third parties named in those interviews, and FBI agents who took part in the investigation. The plaintiff brought suit to compel disclosure of the excised information. The district court granted the plaintiff's motion for summary judgment, and ordered the FBI to disclose all excised material. 483 F.Supp. 883. The issue presented by this appeal is whether the trial court erred when it found that exemptions 7(C) and (D) were not applicable to the excised names.

## I.

As a threshold matter, the plaintiff challenges this court's jurisdiction of this appeal, claiming that the district court's order requiring the FBI to turn over the excised information is not a final order, and thus is not appealable.

■ A disclosure order in a FOIA suit is injunctive in nature. It is granted pursuant to 5 U.S.C. § 552(a)(4)(B), which confers jurisdiction upon the district court, "to en-join the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." This vests the district court with all the powers of an equity court to issue injunctive relief from withholding of agency records. *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 18, 20, 94 S.Ct. 1028, 1037, 1038, 39 L.Ed.2d 123 (1974). The courts of appeals have jurisdiction of appeals from interlocutory orders of the district court granting injunctions, pursuant to 28 U.S.C. § 1292(a). Thus we have jurisdiction of the present appeal regardless of whether other issues remain pending in the district court.[2] *Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969, 979 & n.15 (3d Cir. 1981); *cf. Theriault v. United States*, 503 F.2d 390, 391 (9th Cir. 1974) (when release of documents under FOIA is the ultimate relief sought by party, an order compelling their release is final under doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)).

## II.

■ Before turning to the Bureau's specific assignments of error in the district court decision, a brief overview of the relevant statutory framework may be helpful. The purpose of the FOIA is to allow public access to official information unnecessarily shielded from public view, *see EPA v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). An agency must release information in its possession unless it falls within one of the nine statutory exemptions to

1. The FBI reported the results of its investigation to the United States Attorney by the following letter dated November 29, 1973:

On September 8, 1973, David Miller, . . . made a complaint concerning a possible intrusion on his telephone. Investigation was conducted and it was determined that an Illinois Bell Telephone (IBT) repairman was at the site on August 24, 1973. This individual advised that while working on the line he hooked into the line to report a problem he was having with his vehicle. After making his call he returned the transmitting wires under the protective coverings. The wire was forwarded to the Federal Bureau of Investigation Laboratory which could not de-termine whether or not any additional marks were in the wire to those described as having been made by the repairman.

In view of this no further investigation is contemplated by this office.

2. At the time this appeal was taken issues remained before the District Court with respect to disclosure of letters to the FBI from Senators Percy and Stevenson and Congressman Erlenborn, and of attorney's fees. The letters were disclosed in the entirety following in camera review by the district court. The attorney's fees issue has also been disposed of below, and is the subject of a separate appeal to this court.

the Act. In light of the policy favoring disclosure, however, those exemptions are to be narrowly construed. *Theriault v. United States*, 503 F.2d 390, 392 (9th Cir. 1974). The Act provides that the district court is to make a de novo review of the administrative claim of exemption, and that the burden of justifying the decision to withhold is on the agency. 5 U.S.C. § 552(a)(4)(B).

■ In light of the circumstances of this suit,[3] it is also well to note that it is not the purpose of the Act to benefit private litigants, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10, 95 S.Ct. 1504, 1512 n.10, 44 L.Ed.2d 29 (1975), by serving as an adjunct or supplement to the discovery provisions of the Federal Rules of Civil Procedure, *Nix v. United States*, 572 F.2d 998, 1003 (4th Cir. 1978).

In 1974, Congress amended the FOIA provisions governing the role of a reviewing court in considering claimed exemptions. Prior to 1974 investigatory files compiled for law enforcement purposes were deemed entirely exempt from disclosure. *See, e. g., Center for National Policy Review on Race & Urban Issues v. Weinberger*, 502 F.2d 370, 372 (D.C.Cir.1974). The 1974 amendments narrowed this broad grant of exemption by limiting its application to particular types of information within the investigatory file.

Congress was extremely concerned, however, that personal privacy and confidentiality be preserved by means of exemptions 7(C) & (D), those at issue in this suit. Senator Hart, who introduced the amendment, discussed at length the purpose and operation of these exemptions in a Memorandum Letter contained in the legislative history of the amendments. He stated:

> A question has been raised as to whether my amendment might hinder the [FBI] in the performance of its investigatory

duties. The Bureau stresses the need for confidentiality in its investigations. I agree completely....

> ... My amendment would not hinder the Bureau's performance in any way.... [The amendment] was carefully drawn to preserve every conceivable reason the Bureau might have for resisting disclosure of material in an investigative file:
>
> > If informants' anonymity—whether paid informers or citizen volunteers— would be threatened, there would be no disclosure;
> >
> > ....
> >
> > If disclosure is an unwarranted invasion of privacy, there would be no disclosure....;
> >
> > If in any other way the Bureau's ability to conduct such investigation was threatened, there would be no disclosure.

120 Cong.Rec. S17040 (1974), *reprinted in* Subcomm. on Govt. Information and Individual Rights, House Comm. on Govt. Operations. 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Source Book: Legislative History, Texts, and other Documents (Joint Comm. Print) 351 (hereinafter cited as FOIA Source Book).

In relation to the confidential information and source provisions of exemption 7(D) Senator Hart was specific in identifying precisely the burden of justification for withholding that the exemption imposed upon the Bureau:

> [T]he agency not only can withhold information which would disclose the identity of a confidential source but also can provide blanket protection for any information supplied by a confidential source. The President is therefore mistaken in his statement that the FBI must prove that disclosure would reveal an informer's identity; all the FBI has to do is to state

---

**3.** At oral argument counsel for the plaintiff stated, "The reason Dr. Miller wants to have the names is so he can conduct an investigation to find out if those persons have any knowledge upon which he can enforce his rights under 18 U.S.C. § 2520 [the anti-wiretapping

statute]." Similarly the plaintiff's brief contends that he wishes to enlist the support and cooperation of those whose names have been excised in his effort to discover governmental wrongdoing.

the information was furnished by a confidential source and it is exempt.

120 Cong.Rec. S36871 (Remarks of Sen. Hart) (1974), *reprinted in* FOIA Source Book at 451. *See Terkel v. Kelly,* 599 F.2d 214, 216 (7th Cir. 1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980).

A. Exemption (b)(7)(D).

We first turn our attention to (b)(7)(D), which exempts investigatory records compiled for law enforcement purposes to the extent that their release would "disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, . . . confidential information furnished only by the confidential source." The district court noted that this exemption is available to an agency either if the source of the information is given an express assurance of confidentiality, or if one could reasonably infer such an assurance from the circumstances of the interview. It concluded that the Government had failed to carry its burden of proof on its claim that the interviews at issue were given with such implied assurances of confidentiality. The trial court expressed two grounds for its conclusion. First, it noted an affidavit from one interviewee which specified that no express assurances of confidentiality were made, and that she did not infer such a pledge of confidentiality. Second, the court held that the Bureau had failed to show that this was a case in which an interviewee might have some reason for desiring confidentiality. The Bureau contends that the trial court erred by imposing a higher standard of proof upon the FBI than that intended by the legislature, and the standard established by this court in *Scherer v. Kelley,* 584 F.2d 170 (7th Cir. 1978), *cert. denied,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778.

▇ In *Scherer,* this court examined FBI claims of exemption under §§ 7(C) & (D). We concluded that FBI affidavits which "comprehensively set forth the exemptions upon which [the] agency had relied when it excised portions of its file . . . and set forth the reasons underlying their use," were sufficient to sustain FBI claims of exemption. 584 F.2d at 175, 176. *See Maroscia v. Levi,* 569 F.2d 1000 (7th Cir. 1977). We find that this standard is in keeping with the purpose of the Act as expressed in its legislative history, *supra.*

▇ Special Agent King's lengthy and detailed affidavit of October 28, 1977, adequately meets this standard. It identifies each type of excision and relates them in particular detail to the relevant claimed exemption. The affidavit also sets forth the reasons of the FBI in relying on the claimed exemptions, and articulately expresses the concern of the Bureau that such material remain confidential in order to preserve the Bureau's ability to elicit continued public cooperation through such interviews. *See Scherer,* 584 F.2d at 176; *Maroscia,* 569 F.2d at 1002. The legislative history makes it clear that the drafters of the 1974 amendments were fully cognizant of such dangers, and did not seek to impose a heavy burden of justification, *see* remarks of Senator Hart, *supra.* We find that the FBI's affidavit demonstrates that the FBI responded to Miller's request in a responsible and conscientious manner. It thus meets the *Scherer* standard, and is sufficient to satisfy the burden of proof imposed upon the Bureau by § 552(a)(4)(B). *Terkel v. Kelly,* 599 F.2d 214, 217 (7th Cir. 1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). Unless there is evidence to the contrary in the record, we believe such promises of confidentiality are inherently implicit in FBI interviews conducted pursuant to a criminal investigation. This is necessary not only to protect the individual interviewee, but also to insure the continuing efficacy of FBI criminal investigation. We are unpersuaded by the district court's rationale for its contrary disposition.

▇ The court relied on the affidavit of Mrs. Kenneth Triphan (Triphan), which stated that she did not receive express assurances of confidentiality, nor was she led to believe that the information she gave

was taken on an implied promise of confidentiality. The trial court apparently found this subjective evaluation of one interviewee sufficient to infer that the Bureau did not imply confidentiality to any of the interviewees. While we agree that Triphan has waived whatever confidentiality attached to the contents of her own interview, and that the Bureau must therefore disclose its contents to Miller, unless they are otherwise exempt under § 7(C), we cannot draw the inference that this indicates that manifestations implying confidentiality were not made to other interviewees, or indeed to Triphan herself on an objective basis. Indeed, the fact that among all the interviewees, only Triphan has waived the confidentiality of her interview is supportive of rather the precisely contrary view— that the other interviewees did infer and rely upon assurances of confidentiality. *See Nix v. United States*, 572 F.2d 998, 1004 (4th Cir. 1978).

Nor are we convinced by the district court's assertion that this is not a case in which the interviewees might have a reason for desiring confidentiality. It is true that the interviewees are not here in a situation where revelation of their names is likely to subject them to employer retaliation, *see, e. g., Wellman Industries, Inc. v. NLRB*, 490 F.2d 427, 431 (4th Cir. 1974), *cert. denied*, 419 U.S. 834, 95 S.Ct. 61, 42 L.Ed.2d 61 (employer sought release of employee interviews), or danger of revenge through physical reprisal, *see, e. g., Nix v. United States*, 572 F.2d 998, 1004 (4th Cir. 1978) (release of names of guards and prisoners who made statements in regard to a prisoner's brutality charge). A strong potential for harassment and invasion of privacy of the individual interviewees does, however, remain a real possibility here.

Miller stated in his original complaint to the FBI that he is "litigatous [sic] and a complainer," and identified himself to the investigating agent as the plaintiff in numerous lawsuits. Miller also recorded the license plate number of the agent's personal automobile at that time, stating that he did so as a matter of course. An internal FBI note released to Miller as part of the material he requested further indicates that he "introduces himself at Township meetings to Sergeant-at-Arms as that officer will most likely bodily remove him from the meeting."

Miller has indicated, *see* note 3 *supra*, that he seeks the deleted names to pursue civil action, and to enlist their cooperation and support. While we applaud the willingness of the interviewees to "get involved," in crime prevention and investigation by speaking to FBI agents confidentially, we can also appreciate that some might be reluctant to enlist, or be drafted, in Miller's anti-government crusade. While they are certainly free to waive their right to confidentiality and step forward, as Triphan has done, it is not the role of the FBI to suffer them to do so, regardless of the possibly beneficent ultimate purposes of Miller's suit. *See Nix*, 572 F.2d at 1003 (the right of a FOIA plaintiff to obtain information is not enhanced by his needs as a private civil-rights litigant). Furthermore, in light of Miller's self-proclaimed litigiousness, some interviewees might be worried that if Miller disagrees with their statements they might find themselves defendants in expensive civil litigation. As we noted above, we believe it is essential to the continued ability of the FBI to conduct effective criminal investigation that witnesses feel free to fulfill their obligations as citizens without fear of exposing themselves to such intrusion or harassment.

We therefore find that the trial court erred in concluding that exemption 7(D) did not shield the names of the interviewees and third parties mentioned in the interviews from disclosure, with, as we noted above, the exception of the Triphan interview, which alone must be disclosed without excision of the name of the interviewee. We now turn our attention to exemption 7(C) to determine whether the court ruled properly that the other excised names were not protected by its strictures.

**B. Exemption (b)(7)(C).**

In analyzing the 7(C) exemption, which provides for exemption from disclo-

sure of "investigatory records compiled for law enforcement purposes, . . . to the extent that production of such records would . . . constitute an unwarranted invasion of personal privacy," the trial court adopted the balancing test formulated in *Dept. of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). In *Rose*, the Supreme Court held that exemption (b)(6) of the FOIA, "require[s] a balancing of the individual's right to privacy against the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'" 425 U.S. at 372, 96 S.Ct. at 1604.[4] The trial court recognized that FBI agents have a privacy interest in withholding their names from public disclosure in connection with a criminal investigation. It concluded, however, that since there was no danger to the agents on the facts of this particular case, but rather only an abstract potential for harassment and annoyance and some possibility that future undercover investigations could be jeopardized, such a privacy interest was therefore minimal.

In balancing these potential invasions against the public interest it found in disclosure of the excised names, the trial court concluded:

> [O]nce we have found a public interest in disclosure, and the government has not pointed to any circumstance peculiar to this case which indicates greater potential for harassment, annoyance, or the compromising of undercover assignments than would be present in every case, we shall resolve the balancing test in favor of disclosure. . . . In weighing the public interest in disclosure against the privacy interests, we conclude that the government has not satisfied its burden and that disclosure here will not constitute an "unwarranted" invasion of personal privacy. Defendants must release the names of FBI agents withheld. . . .

Mem.Op. at 9 (citations omitted). The FBI contends that the trial court erred, first by weighing too lightly the asserted privacy interests of the FBI agents, and second, by according too substantial a weight to the purported public interest in disclosure. We will turn our attention to each seriatim, and then to the manner in which the district court balanced them one against the other.

1. Privacy Interests of the FBI Agents

The district court concluded that FBI agents must have a privacy interest peculiar to the facts of a given case before those interests are serious enough to warrant disclosure. We are persuaded that the court erred by seeking such a particular interest, and that the King affidavit sets forth privacy considerations sufficient to establish that FBI agents have not insubstantial privacy interests whenever disclosure is sought of records of a criminal investigation.

In identifying those privacy concerns, King's affidavit stated:

> The privacy consideration is to protect these FBI employees, as individuals, from unnecessary questioning and intrusion into their private lives by members of the public. Additionally, FBI Agents are charged with the responsibility of investigating all matters within the jurisdiction of the FBI. As such, an Agent may investigate applicant matters for a period of time, followed by assignment to strictly criminal or national security matters. These latter assignments may even involve serving in an undercover capacity. To release to plaintiff the identities of all FBI agents involved in the investigation, regardless of their place of assignment or degree of involvement, must be considered a release to the public at large. Such wholesale release, without giving consideration to the current investigative assignments of the FBI Agents involved, would unnecessarily disclose their identities, serve no useful function to plaintiff, and could possibly jeopardize the current, and unknown to affiant, investigative activity of these Agents. It is noted that

---

4. The district court properly noted that privacy interests are afforded more protection by (b)(7)(C) than by (b)(6), which requires disclosure unless the invasion of privacy would be

"clearly" unwarranted. *See Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1136 n.7 (4th Cir. 1977).

FBI Agents come into contact with individuals from all strata of society. They conduct searches and make arrests, both of which constitute reasonable, but nonetheless serious, intrusions into peoples' lives. Many of these people carry grudges which last for years and seek any excuse to harass the responsible Agent. King Affidavit at 8–9. We find that the FBI has thus met its burden of demonstrating the existence of substantial and legitimate privacy concerns in the names of agents conducting a criminal investigation.

As the Court of Appeals for the Fourth Circuit remarked in *Nix*, 572 F.2d at 1006,

[o]ne who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

We believe these privacy interests are serious and substantial, and absent a countervailing showing of substantial public interest in disclosure, merit the protection of exemption 7(C). Furthermore, we question the district court's finding that no special hazard of harassment or annoyance exists in this case in light of Miller's self-proclaimed contentiousness, *see supra*. It is not necessary that harassment rise to the level of endangering physical safety before the protections of 7(C) can be invoked. *See Terkel v. Kelly*, 599 F.2d 214 (7th Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Nix*, 572 F.2d at 1006 n.8; *Maroscia v. Levi*, 569 F.2d 1000 (7th Cir. 1978).

2. The Public Interest in Disclosure

The trial court identified two types of public interests which it believed disclosure of the names of the participating agents would further: first, "with complete disclosure, plaintiff would be able to determine whether the FBI's investigation of the illegal wiretap was complete and adequate";

and, second, that if the release of the names of FBI agents might aid the plaintiff in bringing a suit under 18 U.S.C. § 2520, note 3 *supra*, then their release would benefit a public interest. The Bureau contends the court erred by overvaluing both of these asserted benefits.

As to the first of the asserted public interests, that Miller would use the information to serve as a watchdog over the adequacy and completeness of an FBI investigation, we are absolutely unpersuaded by the reasoning of the trial court. As a preliminary matter, we note that this justification would apparently apply to every FBI criminal investigation, severely vitiating the privacy and confidentiality provisions of exemptions 7(C) and (D). We further find the record demonstrates that this is not a case of sufficient public importance to warrant such a probe of the FBI's efficiency. The plaintiff's broad unsupported hints of a government coverup or undercover surveillance fly in the face of the substance of the disclosed documents which reveal this case as one of consequence to only one individual.[5] There is no allegation of wrongdoing by high-ranking government officials or indeed by any FBI personnel to support any public interest in any further probe into the thoroughness of the instant investigation. *Cf. Congressional News Syndicate v. Dept. of Justice*, 438 F.Supp. 538, 544 (D.D.C.1977) (Watergate-related investigation). In the absence of such a showing of special public interest in testing the thoroughness of an investigation, we find it of little weight. We further note that, as the plaintiff concedes, the substance of the information in the FBI files has been exposed in its entirety, and only the names of the FBI agents deleted. In this respect the Bureau has followed the directive of this court that only that precise information as to which confidentiality is claimed may be withheld. *Terkel v. Kelly*, 599 F.2d at 1217–18. The documents thus reveal the entire course of the investigation and the facts it uncovered. This information should be sufficient to permit the plaintiff to eval-

5. *See* note 1 *supra*.

uate the thoroughness of the investigation. We find any public interest in pursuing the completeness and adequacy of the investigation beyond this point to be minimal in the extreme.

We believe that the trial court similarly overvalued the public interest to be vindicated by the plaintiff's maintenance of a private lawsuit. The court noted that a mere private interest in maintaining such a suit would not suffice, but concluded that here the private litigant's interest in such a suit would overlap that of the public, and stated, "Just as the vindication of constitutional rights by private litigants in § 1983 actions serves the public interest, the vindication of important statutory rights such as those embodied in 18 U.S.C. § 2520 also serve the public interest." Mem.Op. at 7–8. As we noted above, however, the FOIA was not enacted for the benefit of private litigants, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10, 95 S.Ct. 1504, 1512 n.10, 44 L.Ed.2d 29 (1975).

The *Nix* court rejected a similar argument in a case in which the plaintiff, a prisoner, had filed an FOIA suit to discover documents relating to his alleged mistreatment by prison guards. He had also filed a suit, apparently under 42 U.S.C. § 1983, claiming that the alleged mistreatment violated his civil rights. In rejecting the argument that this created a public interest sufficient to override the guards' right to privacy, the court concluded:

> As this court observed in *Deering Milliken [v. Irving]*, 548 F.2d [1131 (4th Cir. 1977)] at 1134–35, FOIA's purpose is to inform the public about the action of government agencies. It was not designed to supplement the rules of civil discovery. Thus, the right of Nix to obtain information is neither enhanced nor diminished because of his needs as a litigant, but is to be measured by the right of the public to obtain the same information.

572 F.2d at 1003. We find this analysis persuasive and applicable a fortiori to this case in which no civil suit has yet been filed, and the rights assertedly violated do not rise to a constitutional level, but where the plaintiff has merely stated that he hopes to obtain information that will aid him in bringing suit. Were this the test for determining the existence of a public interest, every FOIA claimant against the FBI could override the exemption of § 7(C) by the simple expedient of claiming that he hoped to uncover violations of constitutional or statutory rights. Such a test is rife with the potential for abuse, and does not comport with the protective legislative intent embodied in the exemptions of section seven of the FOIA.

### 3. Balancing

In light of our conclusions above that the agents' interest in privacy is substantial and the public interest in disclosure here is slight, we reverse the trial court's conclusion that exemption 7(C) is inapplicable. We also find that the court erred by failing to consider the substantial public interest in maintaining the integrity of future FBI undercover investigations served by the preservation of the privacy of agents' names, which we believe further militates in favor of nondisclosure.

### 4. Privacy Interests and Third Parties

 In light of our holding above that the names of interviewees and third parties are protected under exemption 7(D), we need not reach the question whether they are also protected by exemption 7(C). The question remains, however, whether third party names mentioned in the Triphan interview, as to which § 7(D) confidentiality was waived, are disclosable or protected under § 7(C).

As we noted above, a real potential for harassment and intrusion exists in this case. This could erode the privacy of individuals unknowingly named by an interviewee, such as Triphan, who does not himself or herself desire confidentiality. Revelation to the public at large of the names of such third parties might also stigmatize them as connected with an FBI criminal investigation. Release of their names might not only have these individualized deleterious

effects, but also has the potential to lessen public confidence in the integrity of FBI criminal investigations. We therefore find that third parties do have a substantial privacy interest in nondisclosure. In light of our determination above that the public interest in disclosure here is minimal, under the *Rose* balancing test we hold that the third parties' privacy interest outweighs any public interest in disclosure, and the names of third parties mentioned in any interview, including the Triphan interview, are protected by exemption 7(C), and need not be disclosed.

### III.

Accordingly, the order of the district court is reversed, except as to the affidavit of Mrs. Kenneth Triphan, which must be released to the plaintiff in its entirety without excisions except for the names of FBI agents and third parties, which are exempt under § 7(C). The appellee shall bear the costs of this appeal.

AFFIRMED IN PART; REVERSED IN PART.