Peter IRONS and Melvin Lewis,
Plaintiffs, Appellees,

v.

FEDERAL BUREAU OF INVESTIGA-
TION and Department of Justice,
Defendants, Appellants.

No. 86–1446.

United States Court of Appeals,
First Circuit.

Argued Dec. 5, 1986.

Decided Feb. 5, 1987.

See also 571 F.Supp. 1241.

Deborah Ruth Kant, Dept. of Justice, with whom Leonard Schaitman, Dept. of Justice, Richard K. Willard, Asst. Atty. Gen., Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., were on brief, for defendants, appellants.

Edward Greer, Cambridge, Mass., with whom Stephanie Levin, Boston, Mass., was on brief, for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, and TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

This case presents a question of novel impression in this circuit: does the willingness of a confidential informant to give trial testimony, if necessary, constitute a blanket waiver of the source's confidentiality so that investigatory records of the Federal Bureau of Investigation (FBI) which might tend to reveal his identity become subject to disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552? The district court, favoring a per se rule concerning such potential witnesses, answered this inquiry in the affirmative. We do not agree.

## I. BACKGROUND

Peter Irons and Melvin Lewis, plaintiffs-appellees, are recognized scholars specializing in the field of legal history. They have been engaged for some time in a research effort directed at the infamous "McCarthy Era," and particularly, prosecutions of the Communist Party and certain of its alleged members under the Smith Act circa 1948–1956. Along the way, the professors served an FOIA request for the files compiled by the FBI in the course of gathering information about the American Communist Party and its membership in the early years of the Cold War. (The legitimacy of the appellees' professed need has not been questioned; the record contains several essentially uncontradicted affidavits which limn how the Smith Act file materials dovetail with the ongoing scholarly work.) In addition, Irons and Lewis sought a waiver of all fees connected with the search and the administrative processing of their request. *See* 5 U.S.C. § 552(a)(4)(A).

When the expected dispensation was not granted in full, the requestors brought suit in the United States District Court for the District of Massachusetts. On September 28, 1983, the district court ordered the FBI to waive all fees and costs. The requestors and the government soon thereafter docketed a stipulation concerning the order and timing of document production and the prospective compilation of an index. Inasmuch as the files encompassed some 60,000 pages which had to be culled before dissemination, the parties agreed to a phased schedule of releases over time. In the lengthy interval that followed, enormous care was taken both by the requestors (responsibly to trim the scope of their demands) and by the government (to effect due and expeditious compliance with what remained of the FOIA requests).

When roughly half of the documents had been delivered (some in excised form), the appellees noted that, although the disclosure included contemporaneous reports of FBI interviews prepared by Bureau agents, the names of the interviewees and any information from which their identities could be deduced was often deleted from the reports. In pursuing this course of redaction before release, the FBI relied upon 5 U.S.C. §§ 552(b)(7)(C) and (D). The relevant text of these exemptions at the time the doctored documents were delivered read as follows:

This section [the FOIA] does not apply to

...

\* \* \* \* \* \*

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy, [or] (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency

conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, ...

5 U.S.C. § 552(b)(7) (West Supp.1985).[1]

The requestors were not so easily to be denied. On November 26, 1985, they asked the district court for partial summary judgment rejecting the claimed applicability of the specified exemptions and ordering the defendants (appellants before us) to yield the withheld material. After some intermediate skirmishing, irrelevant for our purposes, the district court, in an *ore tenus* bench decision, invoked what can aptly be described as a "per se potential witness" rule: it held that the protection for confidential sources afforded by Exemption 7(D) did not warrant masking the identities of informants who had agreed, expressly or by fair implication, to testify if necessary in the Smith Act prosecutions. And, after balancing the generic privacy interests of the informers against the requestors' authentic needs and the perceptible public benefits associated with disclosure, the district judge held that Exemption 7(C) was similarly unavailing. He therefore granted the motion for partial summary judgment and commanded that the documents be supplied in unredacted form. This appeal ensued.

## II. APPELLATE JURISDICTION

As a threshold matter, we must ascertain whether we have jurisdiction to entertain this appeal here and now. The litigation is not over, so there is no "final judgment" to be reviewed, as the term is usually defined. *See* 28 U.S.C. § 1291. The appellants argue that the district court's turnover order is in the nature of an injunction, *cf.* 5 U.S.C. § 552(a)(4)(B) (vesting jurisdiction in the district courts "to enjoin the agency from withholding records and to order the production" of such records), thus immediately appealable under 28 U.S.C. § 1292(a)(1). There is, concededly, respect-

able authority to that effect. *See Miller v. Bell*, 661 F.2d 623, 625 (7th Cir.1981) (per curiam), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982). Alternatively, the FBI contends that since the district court's release order (i) lays down a broad principle which comprises the law of the case in a consummate fashion, (ii) settles an important point of controlling law, and (iii) will be effectively unreviewable on appeal from final judgment, if complied with (after all, once the identities of the sources are revealed, the ballgame will be over), this situation fits within our collateral order jurisdiction. *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 803 (1st Cir.1985); *see generally Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

We need not split fine hairs on this point. Though sister circuits have diverged in choosing the precise rationale which permits them to review FOIA cases at an equivalent stage of the proceedings, *compare, e.g., Miller v. Bell*, 661 F.2d at 625 (FOIA release order is injunctive in nature; therefore, immediate appellate review is available under 28 U.S.C. § 1292(a)) *with Theriault v. United States*, 503 F.2d 390, 391–92 (9th Cir.1974) (FOIA release order meets *Cohen* collateral order standard), all have agreed that appellate jurisdiction vests at the time the turnover order is made.

█ We concur. To hold otherwise would be to force the government to let the cat out of the bag, without any effective way of recapturing it if the district court's directive was ultimately found to be erroneous. And, as we have noted in the past, the fact that the right asserted is, like this one, essentially incapable of vindication if the aggrieved party must await an appeal from final judgment, "should be the 'central focus' and perhaps even the 'dispositive criterion' of appellate jurisdiction over

---

1. Congress has lately acted to amend the FOIA (including Exemption 7) and has made the amendments applicable to all pending civil suits, as discussed *infra* at Part III(B). *See*

Pub.L. No. 99–570, § 2, subtitle N, 100 Stat. 3207, 3207–48 (1986). The amendments do not significantly alter the application of Exemption 7 to this controversy.

[interlocutory] orders." *Boreri v. Fiat S.P.A.*, 763 F.2d 17, 21 (1st Cir.1985) (quoting *In re Continental Investment Corp.*, 637 F.2d 1, 6–7 (1st Cir.1980)). *See also In re Empresas Noroeste, Inc.*, 806 F.2d 315, 317 (1st Cir.1986); *Rodriguez v. Banco Central*, 790 F.2d 172, 178 (1st Cir.1986); *In re San Juan Star Co.*, 662 F.2d 108, 112 (1st Cir.1981). Here, irreparable harm would plainly result to the appellants from an inability to obtain precompliance review.

We therefore spurn any suggestion that this appeal is not properly before us.

## III. EXEMPTION 7(D)

In our consideration of the merits of this appeal, we turn first to the applicability of Exemption 7(D). At the verge, however, we must confront a preliminary point. The appellees urge us to appraise the district court's conclusion that 7(D) had been waived under a "clearly erroneous" test. The appellants, on the other hand, maintain that the scope of our review, given the circumstances sub judice, is unfettered. We will first establish the appropriate standard for our inquiry and will then proceed to discuss the merits of the claim of exemption under 5 U.S.C. § 552(b)(7)(D).

### A. *Standard of Review*

The appellees, in hawking the "clearly erroneous" rubric, place primary reliance upon *Ingle v. Department of Justice*, 698 F.2d 259, 267 (6th Cir.1983) and *Columbia Packing Co. v. United States Dep't of Agriculture*, 563 F.2d 495, 500 (1st Cir. 1977). We find that reliance to be mislaid. Where the conclusions of the trial court depend on its election among conflicting facts or its choice of which competing inferences to draw from undisputed basic facts, appellate courts should defer to such fact-intensive findings, absent clear error. That is essentially the lesson that *Ingle, Columbia Packing*, and a host of like cases teach. *Columbia Packing*, in which the district court examined each of the records in camera to determine whether they comprised personnel and medical files within the intendment of Exemption 6, *see*

563 F.2d at 498–99, is a good example of the genre.

The case at bar is a breed apart. No such fact-specific choices are involved. To the contrary, this appeal falls into a wholly different category: it concerns a claimed misapprehension anent the applicable rule of law. The district court, in finding that Exemption 7(D) did not apply, eschewed any individualized examination of the documents at issue. Rather, the court handed down a ruling of general applicability; it held that "an indication of willingness to testify amounts to a waiver of the confidentiality which was afforded to the informant in the first instance." This tenet was plainly intended to apply to all of the records then in dispute and to any later-discovered files which fit into the same overall mold. The district judge ruled on the five sets of documents then before him as a group, without particularized inquiry into the contents of each record or the facts surrounding each individual informant's "agreement" to testify.

■ Viewed in this light, it is readily apparent that the court below did not engage in "factfinding" in the accepted sense of the term; the only divination of fact implicit in its decision was the determination that each of the sources had agreed to be a witness at trial, if necessary. That fact is not, and never was, in dispute; the government conceded all along that certain informants had indicated a willingness to testify, if push came to shove. The quarrel here is, and has consistently been, over the purely legal question of whether such a qualified willingness to testify, in and of itself, amounts to a waiver of confidentiality. This is a question of law, not of fact. Indeed, the appellants come before us seeking review of the grant of partial summary judgment, and Fed.R.Civ.P. 56(c) bars the nisi prius court from resolving any controverted *factual* issues at the summary judgment stage. So, however one slices the loaf, the scope of our review on this appeal is plenary. *See New England Apple Council v. Donovan*, 725 F.2d 139, 141 n. 2 (1st Cir.1984); *see also Lame v. United*

*States Dep't of Justice,* 767 F.2d 66, 69 (3d Cir.1985).

## B. *The Potential Witness Rule*

We begin our examination of the main problem at hand with some general observations concerning the FOIA. We acknowledge that the statute manifests an overall "policy of broad disclosure of government documents to ensure an informed citizenry." *Brant Construction Co. v. EPA,* 778 F.2d 1258, 1262 (7th Cir. 1985). Doubts are customarily to be resolved in favor of openness. *See FBI v. Abramson,* 456 U.S. 615, 630–31, 102 S.Ct. 2054, 2063–64, 72 L.Ed.2d 376 (1982). Yet that mandate, though sweeping, is far from absolute. In order to preserve certain vital government interests and to protect individuals where necessary, Congress promulgated a series of explicit exemptions from the revelatory norm. *See* 5 U.S.C. § 552(b)(1)–(9). "Federal agencies are required to release the requested information unless it falls within one of the nine statutory exemptions; in keeping with the general policy of disclosure these exemptions are narrowly construed." *Brant,* 778 F.2d at 1262; *accord New England Apple Council,* 725 F.2d at 141–42. *See also Department of the Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976). The burden, of course, is on the withholder to establish the viability of an exemption. 5 U.S.C. § 552(a)(4)(B). *See Johnson v. United States Dep't of Justice,* 739 F.2d 1514, 1516 (10th Cir.1984); *Kiraly v. FBI,* 728 F.2d 273, 276 (6th Cir.1984); *Miller,* 661 F.2d at 626.

Many of the FOIA exemptions depend upon the intrinsic qualities of the materials to which they relate. For example, documents are shielded by Exemption 2 if and to the extent that they "relate[ ] solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Other exemptions require a balancing of interests: under Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), for instance, a court must assay competing values in order to determine if privacy concerns outweigh the re-

questor's need to access the records and the public interest in openness. *E.g., Department of the Air Force,* 425 U.S. at 370–73, 96 S.Ct. at 1603–04. *See also Columbia Packing,* 563 F.2d at 498–500 (similar balancing test for Exemption 6).

■ . Exemption 7(D) is cut from still a different bolt of cloth. So long as one is dealing with "investigatory records compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), the inherent nature of the requested documents is irrelevant to the question of exemption. What matters is whether or not the information—be it a sophisticated design for limpet mines or a mundane laundry list—would "disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). If so, it is exempt. *Brant,* 778 F.2d at 1262. Likewise, the judiciary is not permitted to undertake a balancing of conflicting interests, but is required to uphold a claimed 7(D) exemption so long as the statutory criteria are met. *New England Apple Council,* 725 F.2d at 145; *Sands v. Murphy,* 633 F.2d 968, 971 (1st Cir.1980) ("The legislative history shows that the policy of the 7(D) exemption is to preclude absolutely the disclosure of the informer's identity, and not to make it dependent on a judicial balancing."). Thus, in the precincts where Exemption 7(D) patrols, the courts must look to content not to calibrate the intrinsic value of the content per se, but solely to assess its *indirect* effect: will revelation of the data tend in the bargain to betray the identity of a confidential source? If so, absent a waiver, the shroud of secrecy cannot be lifted by judicial decree.

In the environs of this case, peripheral considerations need not long detain us. We have previously acknowledged, in a suit involving one of the very appellees who is again before the court, a congressional intent that "the investigatory records of law enforcement agencies are inherently records complied for 'law enforcement purposes' within the meaning of Exemption 7." *Irons v. Bell,* 596 F.2d 468, 475 (1st Cir. 1979). Moreover, a number of courts of

appeal have found a promise of confidentiality to be "inherently implicit in FBI interviews conducted pursuant to a criminal investigation," *Miller*, 661 F.2d at 627; *accord Johnson*, 739 F.2d at 1517–18; *Ingle*, 698 F.2d at 269, at least in the absence of hard evidence to the contrary.[2]

Given the existence of an initial expectation that debriefings would be kept in the bosom of the lodge, coupled with the fact that the FBI evidently took great pains to honor this expectation, we are left to decide whether the promise of confidentiality was, without more, vitiated by the source's expressed or implied willingness to testify in court. Put another way, does an informant who leaves the door ajar for his appearance as a trial witness thereby forfeit his anonymity under Exemption 7(D)?

The requestors urge, and the district court adopted, a per se guideline equating willingness to give evidence with a waiver of the prophylaxis of Exemption 7(D). We agree with them in one respect: it is the subjective intent of the informer—whether or not he intended to abandon the safeguards of the exemption—which controls; the mere (uncommunicated) fact that the agency considers him to be a likely witness is beside the point. We refuse, however, to venture further down the road which the appellees have designated, for an unadorned indication by a source that he would testify if called upon to do so is in our judgment too exiguous a basis upon which to predicate a finding of the requisite intent. We believe that such a per se potential witness rule has little to commend it.

In the first place, the common denominator of all the legal definitions of "waiver" is the purposeful relinquishment of an appreciated right. *E.g., Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*, 752 F.2d 178, 183 (5th Cir.1985) (waiver results "where a party demonstrates intentional relinquishment of rights of which the party has full knowledge"); *Hart Engineering Co. v. FMC Corp.*, 593 F.Supp. 1471, 1478 (D.R.I.1984) ("A waiver in its classic sense is a 'voluntary and intentional relinquishment of a known right, benefit, claim or privilege which, except for such waiver, the party would have enjoyed.'") (quoting *Richland County v. State*, 180 N.W.2d 649, 657 (N.D.1970)). It is beyond cavil that a valid waiver of a legal right requires *both* knowledge of its existence and an uncoerced intent to relinquish it. *Regional Properties*, 752 F.2d at 183; *CBS, Inc. v. Merrick*, 716 F.2d 1292, 1295 (9th Cir.1983); *Pastrana v. Federal Mogul Corp.*, 683 F.2d 236, 241 (7th Cir. 1982); *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir.1982). In a matter so potentially important as an informant's right to remain hidden from public view, a blanket rule that an indicated willingness to testify surrenders the protection of Exemption 7(D) seems much too casual an inference to be drawn.[3]

To be sure, every waiver need not be express; at times, one can fairly be deduced from conduct or from a collocation of the circumstances. *Matter of Garfinkle*, 672 F.2d at 1347. Nevertheless, "if proof of a waiver rests on one's acts, 'his act[s] should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible.'" *Bechtel v. Liberty National Bank*, 534 F.2d 1335, 1340 (9th Cir.1976) (quoting

---

**2.** Like all of Gaul, the circuits are divided three ways as to exactly what is required to establish an implied promise of confidentiality. *See Johnson*, 739 F.2d at 1517–18 (collecting cases and discussing alternative viewpoints from other circuits). Because that question is not raised directly on this appeal (indeed, the district court appears to have assumed that, apart from the informants' indicated willingness to testify, such implied promises were in force here), we do not purport to establish a rule for this circuit. We leave the question for another day, noting that the evidence in this record amply satisfies even the most rigorous of the three standards.

**3.** Literature, like law, has frequently portrayed the difficulties attendant upon making an effective waiver. *See, e.g.,* R. Burns, *Epistle to a Young Friend*, st. 6 (1786) ("I waive the quantum o' the sin,

The hazard of concealing:
But, och! it hardens a' within,
And petrifies the feeling!").

*Buffum v. Chase National Bank of City of New York,* 192 F.2d 58, 61 (7th Cir.1951), *cert. denied,* 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952)). The inferred waiver inherent in the per se potential witness rule does not pass muster under this standard. There are simply too many plausible explanations for a person's initial willingness to testify: he may know that he can recant at any time prior to raising his right hand, he may be gambling on the unlikelihood of his testimony ultimately proving to be needed, he may feel that his evidence will be directed toward a much narrower field (enabling him to camouflage his true role notwithstanding his court appearance), or he may be downright fearful of declining the government's invitation. The possibilities are virtually endless. Given the myriad of potential variations on the theme, to read automatically into every such acquiescence an across-the-board renunciation of the usual assurance of confidentiality seems to require several leaps in logic.

█ We are reluctant to gallop off on such an intellectual steeplechase without convincing evidence of legislative intent favoring such a construction of the statute. Certainly, the bare language of Exemption 7(D) offers no such comfort, and the appellees are unable to point to any more inviting verbiage elsewhere in the FOIA. Moreover, upon independent examination, we do not think that Congress, in enacting the FOIA and Exemption 7(D), contemplated such a facile doffing of the cloak of confidentiality. The legislative history of the exemption in no way evinces an intent to hamstring investigative agencies or to rock the confidence of informants by requiring the extravagant disclosure of identities. The principal architect of Exemption 7(D) stated that it

> protects without exception and without limitation the identity of informers ... and information which might reasonably be found to lead to such disclosure. These may be paid informers or simply citizens who give information to enforcement agencies and desire their identity to be kept confidential.

120 Cong.Rec. S17034 (daily ed. May 30, 1974) (statement of Sen. Hart). Senator Hart later commented (in a memorandum written, apparently, to assuage the fears of the law enforcement apparatus):

> The Bureau stresses the need for confidentiality in its investigations. I agree completely.... However, my amendment [which became Exemption 7] would not hinder the Bureau's performance in any way.... [The exemption] was carefully drawn to preserve every conceivable reason the Bureau might have for resisting disclosure of material in an investigative file: if informants' anonymity—whether paid informers or citizen volunteers—would be threatened, there would be no disclosures.

120 Cong.Rec. S17040 (daily ed. May 30, 1974).

It is not without significance that Congress has consistently paid homage to these intentions. Most recently, the House and Senate acted to broaden the provisions of Exemption 7, *see* Freedom of Information Reform Act of 1986 (FIRA), Pub.L. No. 99–570, § 2, subtitle N, 100 Stat. 3207, 3207–48 (1986), with the avowed purpose of

> enhanc[ing] the ability of all Federal law enforcement agencies to withhold additional law enforcement information.... There should be no misunderstanding that ... [the 1986 modifications] are intended to broaden the reach of this exemption and to ease considerably a Federal law enforcement agency's burden in invoking it.

199 Cong.Rec. S16504 (daily ed. October 15, 1986) (statement of Sen. Hatch).

As the Court has observed, "while the views of [a] subsequent Congress[ ] cannot override the unmistakable intent of the enacting one ... such views are entitled to significant weight ... when the precise intent of the enacting Congress is obscure." *Seatrain Shipbuilding v. Shell Oil,* 444 U.S. 572, 596, 100 S.Ct. 800, 81?, 63 L.Ed.2d 36 (1980) (citations omitted). *See also United States v. Ven-Fuel, Inc.,* 758 F.2d 741, 758 (1st Cir.1985); *Roosevelt Campobello International Park Commission v. EPA,* 711 F.2d 431, 436–37 (1st

Cir.1983).[4] Although we find no amphiboly in the FOIA as to the matter at issue, we note that the appellees' argument that clarity is lacking is undercut by the newest amendments to the Act—especially when Congress has acted specifically to make the 1986 Amendments applicable to "any civil action pending," as this one was, on the date of their enactment (October 27, 1986). *See* FIRA, *supra,* at § 1804(a). These clear signals from the halls of Congress reinforce our conclusion that Exemption 7(D) must be applied to protect the confidentiality of potential witnesses unless some more definite indicia of waiver can be shown in a given case.

The caselaw, although scanty, likewise counsels restraint. Other circuits have held that actual testimony in open court constitutes a waiver of confidentiality only with respect to the subject matter of the testimony, and not with respect to other matters. *E.g., Scherer v. Kelley,* 584 F.2d 170, 176 n. 7 (7th Cir.1978), *cert. denied,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979); *accord Brown v. FBI,* 658 F.2d 71, 75 (2d Cir.1981). Although the informant was dead and his identity publicly known, the Sixth Circuit held the disclosure of FBI files relating to him still to be precluded. *Kiraly,* 728 F.2d at 278. In the Eleventh Circuit, once confidentiality is established, the identity of witnesses has been said never to be subject to disclosure, even when their statements are part of the public record and their identities are likely discoverable by other means. *L & C Marine Transport, Ltd. v. United States,* 740 F.2d 919, 923–25 (11th Cir.1984).

In the instant case, we need neither embrace nor reject such far-reaching concepts. (Indeed, the government here has surrendered to the requestors the identities of all informants, confidential or otherwise, who actually testified at public trials.) But, though our inquiry has a narrower focus, it

is persuasive to note that, if actual testimony does not open up investigative files carte blanche under the FOIA, then is it surpassingly difficult to see how or why a mere expression of some degree of willingness to testify can or should be held to constitute a waiver of confidentiality. As the Second Circuit has observed: "[T]he proper interpretation of the term 'confidential source' includes an informant who is promised or reasonably expects confidentiality unless and until the agency needs to call him as a witness at trial." *United Technologies Corp. v. NLRB,* 777 F.2d 90, 94 (2d Cir.1985).[5]

■ The rule as so articulated is consistent with the policy underlying Exemption 7(D), that is, "the enhancement of agencies' enforcement abilities by permitting them to withhold the names of persons who provide enforcement-related information." *T.V. Tower, Inc. v. Marshall,* 444 F.Supp. 1233, 1237 (D.D.C.1978). If the courts were to adopt the per se potential witness rule and require the yielding up of every person who had agreed to testify at trial, the chilling effect on third parties would significantly limit the prospective flow of information to the sovereign. *See Kiraly,* 728 F.2d at 278. The government, at the outset of a criminal investigation, would be caught between the devil and the deep blue sea: forced to decide, *a priori,* which witnesses should be ceded confidentiality and which reserved for trial testimony.

It seems to us that the district court's invocation of a per se potential witness rule ignores the overarching purposes of Exemption 7(D). Far from taking reasonable pains to preserve the effectiveness of the law enforcement apparatus as Congress so plainly desired, the inauguration of such a rule overlooks the day-to-day reality of investigations into allegations of criminality. An agency like the FBI reasonably expects to recruit informants by assurances of con-

---

**4.** This principle is, of course, to be applied frugally. Context is all-important. In many (perhaps most) instances, *"post hoc* statements of a congressional Committee are not entitled to much weight." *Weinberger v. Rossi,* 456 U.S. 25, 35, 102 S.Ct. 1510, 1517, 71 L.Ed.2d 715 (1982). But, the concatenation of events here—including the application of the latest amendments to

pending cases—distinguishes this set of circumstances.

**5.** *But see Nemacolin Mines Corp. v. NLRB,* 467 F.Supp. 521, 525 (W.D.Pa.1979) (employee who could have been called to testify at trial is not a "confidential source").

fidentiality. At the same time, the agency (again, reasonably) hopes that such informants will testify if the investigation culminates in a prosecution. A rule which fails to recognize this reality paralyzes the government's legitimate prosecutorial aims and handcuffs its performance of important law enforcement functions. In a very real sense, the agency is forced to choose between establishing a network of confidential sources or formulating a successful prosecutorial strategy. *See United Technologies Corp. v. NLRB*, 632 F.Supp. 776, 782 (D.Conn.), *aff'd*, 777 F.2d 90, 95 (2d Cir.1985); *T.V. Tower*, 444 F.Supp. at 1237. This is exactly the type of unhappy choice that Congress sought to eliminate when it enacted Exemption 7(D). The legislative branch has made its policy choices and the courts must honor them.

Finally, considerations of fairness conduce to the same conclusion. A person who trusts to the discretion of federal authorities and (reluctantly, in many cases) agrees to testify if necessary, cannot blithely be said (on that basis alone) to regard himself as giving a knowing and intelligent waiver of any and all anonymity. There is—or, at least, there should be—a profound difference between placing oneself in the hands of federal lawmen and throwing oneself to the wolves. Indeed, the source may be making a calculated cost/benefit decision in the expectation that the risk variable (*i.e.*, the probability of actually being called to testify in public) is low enough to be acceptable (*i.e.*, to justify cooperation). A per se rule requiring automatic disclosure of the identities of potential witnesses would shift that calculus radically, to the detriment of the most conscientious of informers and the most assiduous of prosecutors.

## IV. CONCLUSION

■ We hold that it was wrong as a matter of law to equate an express or implied agreement to testify, without more,

with a waiver of the confidentiality esteemed by 5 U.S.C. § 552(b)(7)(D). Exemption 7(D) fully protects the withheld records against the requestors' present foray; the appellants have the legal right, under the statute, to draw the curtain of exemption around these antediluvian records.[6] This being so, we need not reach the more fact-specific question of whether the balancing of competing public and private interests under Exemption 7(C) was properly implemented by the court below. *See Sands v. Murphy*, 633 F.2d at 971 (no need to consider 7(C) when 7(D) applies); *Kimberlin v. Department of Treasury*, 774 F.2d 204, 207 (7th Cir.1985) (same).

The district court's grant of partial summary judgment in favor of the appellees is reversed. The turnover order entered below is vacated. The case is remanded for further proceedings consistent herewith.

---

**6.** Inasmuch as the district court did not purport to conduct any in camera review of specific documents, we do not address the question of whether or not the withheld writings (or any or all of them) can fairly be said to tend to reveal the sources' identities. We hold only that, on the record before us, these sources have not been shown to have waived the confidentiality which the Congress has extended.