909 F.2d 1486
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
LITAS INVESTING COMPANY, INCORPORATED and Good Shepherd
Home, Incorporated, Plaintiffs-Appellees,
v.
Ona PRANCKEVICIUTE, Defendant-Appellant.
 No. 89-1242.
 United States Court of Appeals, Seventh Circuit.
 Argued April 3, 1990.
Decided Aug. 1, 1990.
 
 Before WOOD, JR., EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Litas Investment Company (Litas) filed this suit in Indiana state court for possession of property. Defendants removed the case to federal court as a diversity action. The parties consented to a bench trial before a magistrate, who ruled in Litas' favor on all claims. Ona Pranckeviciute, the sole remaining defendant, appeals. We affirm.
 
 I. Background
 
 2
 On August 26, 1982, Ona Pranckeviciute purchased an 80-acre tract of land in Cedar Lake, Indiana from the Salesian Society, Inc. Ona paid $100,000 cash and signed a $900,000 interest-free mortgage in exchange for a warranty deed on the property. Ona subsequently conveyed title to the property to Lithuanian Good Shepherd Home, Inc. (Lithuanian Good Shepherd), an Illinois corporation. Ona and Reverend Anicates Tamozastis (Father Thomas) were the original founders of Lithuanian Good Shepherd. They intended to convert the buildings from a school to a nursing home serving the Lithuanian community.
 
 
 3
 Ona and Father Thomas fell almost a year behind in their mortgage payments and could not afford to finish certain improvements on the property. Kasa Lithuanian Federal Credit Union (Kasa) loaned $250,000 to Lithuanian Good Shepherd to bring the first (Salesian Society) mortgage current and for improvements to the property. The terms provided default on the Salesian Society loan would trigger default on the Kasa loan. The Kasa loan was secured by a second mortgage against the property and was guaranteed by Litas (apparently out of sympathy for the nursing home project).
 
 
 4
 Lithuanian Good Shepherd again fell behind in its payments to the Salesian Society. In the spring of 1985, the Salesian Society began threatening foreclosure. On September 12, 1985, Litas agreed to try to remove Lithuanian Good Shepherd, Ona, and Father Thomas from their liabilities on the Salesian Society and Kasa loans. Ona and Father Thomas executed a quitclaim deed on behalf of Lithuanian Good Shepherd purporting to convey the property to Litas. On October 10, 1985, Litas conveyed its interest in the property to Good Shepherd Home, Inc., an Indiana corporation. By late December 1985, Litas assumed the obligations under the Kasa loan and the Salesian Society loan. On January 30, 1986, Litas recorded the quitclaim deed, but permitted Ona and Father Thomas to remain on the property.
 
 
 5
 By April 1986, Litas discovered that Ona had expanded her farming operation on the property. Litas advised Ona by letter that she would be evicted if she persisted. However, Ona further expanded the scope of her farming and also began to harvest trees. On August 29, 1986, Litas notified Ona and Father Thomas that they were to vacate by September 30, 1986. Ona and Father Thomas refused to leave.
 
 
 6
 On September 19, 1986, Litas filed a complaint in Indiana state court against Ona and Father Thomas seeking possession of the property. Defendants timely removed the case to federal district court, alleging diversity of citizenship and an amount in controversy exceeding $10,000. Defendants filed an answer and counterclaim, alleging Litas breached a "joint venture agreement" with Ona and Father Thomas, and praying for $500,000 in damages. Good Shepherd Home, in light of the interest it had acquired from Litas, was added as a plaintiff. The parties consented to a bench trial before a magistrate pursuant to 28 U.S.C. Sec. 636(c)(1). Father Thomas was dismissed from the action after disclaiming any interest in the property. The magistrate ruled in favor of Litas on all claims. Ona timely moved for a new trial. The court denied the motion. Ona appeals.
 
 II. Analysis
 
 7
 The principal issue on appeal is whether the quitclaim deed which Ona and Father Thomas executed in favor of Litas was a conveyance (as Litas contends) or merely an equitable mortgage (as Ona contends). Since this is a diversity case, Indiana substantive law applies.
 
 
 8
 The question of whether a deed, absolute in form, is in fact a mortgage depends upon the parties' intentions....
 
 
 9
 Indiana courts have looked to various factors in ascertaining the intent to create an equitable mortgage. Among these are: the existence of a debt prior to the transaction or one created as part of the transaction ...; documents that provide the grantor can redeem the property by performing certain conditions within a certain time ...; the grantee gave inadequate consideration for the conveyance of the real property ...; the grantor paid interest to the grantee ...; the grantor retained possession, control, and use of the property free of rent ...; the grantor improved the real estate ...; the grantee did not exercise ownership or control over the property ...; and, the parties intended to extinguish the debt .... Hence, a court must consider all the surrounding circumstances, the parties' positions at the time, their conduct, declarations, and attitude, and any other facts tending to show the true nature of the transaction.
 
 
 10
 Brenneman Mechanical & Electrical v. First National Bank, 495 N.E.2d 233, 239 (Ind.App.2d Dist.1986).
 
 
 11
 The magistrate in this case made the following findings as to the Brenneman factors:
 
 
 12
 First, the defendants in this case are in default to the Salesians on the amount of the payment which was due in September of 1984. Plaintiffs' Exhibit L shows that on July 10th of 1985, the Salesians threatened foreclosure.
 
 
 13
 At the time this transaction was made or very shortly thereafter, the September, 1985 payment was due. The evidence also has indicated that in September of 1985, despite any representations made to the contrary, the defendants had not obtained the necessary licensing from the State to run or operate this property as a nursing home.
 
 
 14
 I believe that in September when this deal was discussed, the plaintiffs were confronted with the loss of the property and the equity they and in there and also the probability of deficiency judgments.
 
 
 15
 Secondly, I find that there were no security agreements or escrow agreements which were ever signed or executed by the parties which would, in any way, undermine the finality and the conclusiveness of the deed that was transferred.
 
 
 16
 Thirdly, there has been no showing that if there was a security agreement what Litas would receive in exchange for assuming the mortgages. In other words, I am left with the firm belief that the only interest Litas has had, the only compensation, to use that term, that Litas would have received for its involvement in this transaction was the title to the real estate.
 
 
 17
 It is unlikely that Litas would have acted without some written protection if it had no received title to the property.
 
 
 18
 Fourth, Litas acted consistently with its stated position, it held title until mortgage from the Salesians and the [Kasa] were assumed. It did, in fact, assume the mortgage both from the Salesians and [Kasa].
 
 
 19
 It could simply have made the mortgage payment without assuming the additional obligations, if that was all it had bargained to do, namely make the payments.
 
 
 20
 I noted in assuming the mortgage from the Salesians they incurred additional obligations and were required to pay interest which they would not have been required to pay if they had merely made the payments without attempting to relieve the defendants from liability on that obligation to the Salesians.
 
 
 21
 Also introduced into evidence today was Plaintiffs' Exhibit [Y] which is the release which releases the defendants from liability from [Kasa] which again is an action consistent with the stated position of Litas.
 
 
 22
 The fifth reason is once the letter was sent on December 10th of 1985 from Mr. Duoba saying that the property, the deed was recorded, that is Plaintiffs' Exhibit T, no objections were made to that letter by Mr. Cepenas. Even if Mr. Cepenas did not receive that letter, it is unlikely that he would not follow up on it, that he would let this matter go unattended for over a year, especially considering the fact that he was aware that certain obligations, certain demands were made by the plaintiffs against the defendants, certain statements were made by the plaintiffs to the defendants indicating that it was a landlord/tenant relationship rather than a mortgagor/mortgagee relationship.
 
 
 23
 Sixth, if I can count correctly, I have reviewed Defendants' Exhibit 19. Repeatedly throughout that agreement which was drafted by Father Thomas, it refers to Litas being the owner of the property. In particular, Paragraph 1 says that Litas was the owner. Paragraph 12 makes reference to a return of the ownership of the property. And Paragraph 20 refers to the owners' equity in the property.
 
 
 24
 Although that was never signed, I think it is evidence of the intent of the defendants in this case. Also Plaintiffs' Exhibit V, which was introduced today, the letter to the attorney again also refers to Litas as being the owner of the property.
 
 
 25
 As to any credibility issues that may have developed during the course of this trial, I resolve any credibility issues in favor of the plaintiffs and their witnesses and against the defendants and their witnesses.
 
 
 26
 In particular, Plaintiffs' Exhibit [Y] shows a misrepresentation on the part of defendant, Ona, concerning the licensing requirements being met. And I consider that on the issue of credibility.
 
 
 27
 We may not overturn the magistrate's factual findings in a Sec. 636(c) case absent clear error. DiMillo v. Sheepscot Pilots, Inc., 870 F.2d 746, 750 (1st Cir.1989) (quoting Irons v. FBI, 811 F.2d 681, 684 (1st Cir.1987)). Brenneman requires that we determine whether the parties intended to convey the property. The magistrate's finding that they did is a reasonable construction of the evidence. We find no clear error in this case.
 
 
 28
 Ona next argues the magistrate erred in admitting an unauthentic document into evidence. The document purports to be a release of Ona and the Lithuanian Good Shepherd from obligations on the Kasa loan (Litas' Exhibit Y). Ona challenges the admission of the release on a number of grounds, most of which she waived by not raising below.[1] Johnson v. Artim Transportation System, 826 F.2d 538, 547 (7th Cir.1987), cert. denied, 486 U.S. 1023 (1988). Her only objection preserved on appeal is that there was no showing the release was ever delivered to Ona. However, she does not explain why a showing of delivery is a necessary predicate to admissibility. Neither does she cite any authority to support reversal on this ground. Federal Rule of Appellate Procedure 28(a)(4) requires an appellant's argument to "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Ona's single statement that "[t]he document was never produced before October 20, 1987, and was not delivered to Ms. Pranckeviciute," (Appellant's Supplemental Brief at 21) is not enough to satisfy Rule 28(a)(4). See Bob Willow Motors v. General Motors Corp., 872 F.2d 788, 795 (7th Cir.1989).
 
 
 29
 Finally, Ona claims the trial court erred in not allowing her enough time to argue her case, including refusing to allow her to deliver an opening statement. The trial court is to be accorded broad discretion in the conduct of a trial; an appellate court will not substitute its discretion for that of the trial judge unless there is a showing of abuse. LaRo Corp. v. Big D Oil Co., 824 F.2d 689, 690 (8th Cir.1987). Ona contends the magistrate wrongly reduced the time allotted for trial from two days to one afternoon. However, the record reveals Ona never objected to the reduction; neither did she ever indicate to the magistrate that she needed more time to present evidence. Her counsel did request time to make an opening statement, to which the magistrate responded: "I am very familiar with this case since I have heard approximately two days of testimony on it. So I do not believe an opening is necessary." Transcript at 332. This was a bench trial, and the opening statement would have been solely for the magistrate's benefit. It was well within his discretion to deny the request.
 
 
 30
 Other than the request for an opening statement, the magistrate never denied Ona's requests for more time. The magistrate allotted each side fifteen minutes to close; Ona did not object. She now contends fifteen minutes was not enough time to read all of her comments, but admits those same comments (in written form) earlier had been made part of the record. In short, the magistrate had all of the evidence and arguments before him necessary to make his decision. We do not believe he abused his discretion in the conduct of the trial.
 
 
 31
 One final note. Ona recites many disagreements she had with her counsel below and obviously has not been happy with the case's progress. She appears before this court without counsel, and is additionally hampered by her unfamiliarity with the English language. (She used an interpreter at oral argument.) Nevertheless, these problems do not excuse the caustic tenor of Ona's appeal. Her first brief cites only two supporting cases; her other three briefs cite no supporting authority whatsoever. Her arguments contain many accusations and little law. Even pro se parties must realize that this is a court of law--all the hyperbole in the world cannot save the day absent a proper legal rationale.
 
 
 32
 The magistrate's decision is affirmed.
 
 
 
 [1]
 Ona's counsel's entire objection below stated:
 If the Court please, we will object to this document, Plaintiff's Exhibit [Y]. This is part of the case in chief. It is not rebuttal. It should have been offered at the time that the plaintiffs' case was made.
 We object also because there is no showing that it was ever delivered to Ona Pranckeviciute.
 Transcript at 265-66.