Sandra **STRUTH**, Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGATION,** Defendant.

No. 82–C–51.

United States District Court, E.D. Wisconsin.

Oct. 30, 1987.

---

Curry First, Perry, First, Lerner, Quindel & Kuhn, Milwaukee, Wis., for plaintiff.

Mel S. Johnson, Asst. U.S. Atty., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

CURRAN, District Judge.

Sandra Struth brings the above-captioned action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C.A. § 552 (West 1977 & Supp.1987), seeking to compel the disclosure of information in the possession of the Federal Bureau of Investigation (FBI). She claims that the FBI is improperly withholding documents she has requested under FOIA relating to an investigation of her involvement in the early 1970's with an organization known as the New American Movement (NAM). Jurisdiction in this court is founded upon 5 U.S.C.A. § 552(a)(4) (West 1977 & Supp. 1987).

## I. PROCEDURAL BACKGROUND

The plaintiff first sought the release of information from the defendant by a letter to FBI headquarters dated March 27, 1981. In response to this request the FBI sent Struth two pages of documents. *See* Complaint at Exhibit A. Also in 1981, the plaintiff mailed a request to the San Francisco field office of the FBI pursuant to the then-effective regulations establishing field offices as separate record systems. *See* Complaint at Exhibit B. The San Francisco office sent the plaintiff forty-one pages of documents and advised her that it had located eighty-five pages identifiable with her request. The defendant explained by letter that:

> 44 complete pages have been withheld from release to you. 39 pages have been withheld in their entirety in that the material is currently and properly classified (b)(1). 2 pages have been withheld under (b)(7)(D), in that the material if released would tend to identify a person who has furnished us information under the ex-

pressed promise of confidentiality. On the remaining 3 pages, exemption (b)(1) was assured in conjunction with (b)(7)(D) as explained above.

Complaint at Exhibit C. The defendant had made excissions and deletions on at least twelve of the forty-one pages released to the plaintiff. *See* Complaint at Exhibit D.

On August 11, 1981, the plaintiff appealed the withholding of information to FBI headquarters in Washington, D.C. *See* Complaint at Exhibit E. Shortly thereafter, the FBI released additional information to the plaintiff, although it continued to withhold what the plaintiff terms "significant aspects" of her appeal. The parties agree that the plaintiff had exhausted all her administrative remedies before filing her complaint in federal court on January 21, 1982. *See* letter from Assistant United States Attorney Mel Johnson to the Honorable Thomas J. Curran (received February 1, 1985).

In the instant lawsuit Struth claims that:

> Plaintiff is entitled, pursuant to 5 U.S. C. § 552(a) et seq. and according to federal statutory law as well as the United States Constitution to inspect and copy the requested documents as well as have the totality of documents concerning plaintiff in custody of the defendants destroyed so that defendants no longer have in their custody any documents, including copies, pertaining to plaintiff and particularly the constitutionally protected activities she engaged in under the First Amendment to the United States Constitution.

Complaint at ¶ 14. In her prayer for relief the plaintiff asks:

> 1. That this court order defendants to produce the requested documents to her in their totality including without any deletions or excissions so that she may inspect and copy such.
>
> 2. That this court order defendants in so producing to plaintiff all such documents and defendants not retain in their custody or control any originals or copies of any documents whatsoever.

3. That this court award plaintiff her costs and disbursements in this action pursuant to 5 U.S.C. § 552(a)(4)(E) and, in addition, her reasonable attorney's fees.

Complaint at 4.

After the defendant answered, the plaintiff requested what is known as a *Vaughn* index—an itemization of the documents claimed to be exempt. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed. 2d 873 (1974). In response, the government filed the declarations of FBI Special Agents Douglass C. Ogden and Richard A. McCauley. Agent McCauley, who at the time served in a supervisory capacity at FBI headquarters, provided a public index for the material sought by the plaintiff and withheld from disclosure pursuant to Exemption 1 of the FOIA. *See* 5 U.S.C.A. § 552(b)(1) (West 1977 & Supp.1987). Agent Ogden, another FBI supervisor of records, provided the FBI's justification for the assertion of the other FOIA exemptions applied to the material at issue.

After these declarations were on file, the defendant moved for dismissal or, in the alternative, for summary judgment on the ground that the FBI had demonstrated that the requested records are protected by one or more statutory exemptions. The FBI maintains that:

As set forth in the Ogden and McCauley affidavits, the FBI processed plaintiff's FOIA request and released all documents responsive to the request with deletions pursuant to the provisions of Title 5, U.S.C. § 552(b)(1), (b)(2), (7)(C) and (b)(7)(D).... such exemptions are entirely justified under the law.

Memorandum in Support of Defendants' Motion to Dismiss or in the Alternative for Summary Judgment at 2.

In response, the plaintiff moved for an *in camera* inspection of the documents withheld and asked that a ruling on the dispositive motion be stayed until pretrial discovery was completed. *See* Federal Rule of Civil Procedure 56(f). The government countered by moving for a protective order staying all discovery until the resolution of the dispositive motion. The plaintiff, in turn, moved for an order compelling discovery.

In this posture this case was transferred to this court where the discovery disputes continued through April of 1986. The court then ordered the parties to file stipulated facts and to file final briefs addressing the motion for summary judgment.[1] In addition, the plaintiff's motion for an *in camera* inspection, which was not opposed by the defendant, was granted. *See* Orders of May 15, 1986 and February 26, 1986. In compliance with the Order, the FBI submitted eighty-eight pages of documents under seal. Having now examined these documents, the court will address the summary judgment motion.

## II. LEGAL STANDARDS

Section 552(a)(4)(B) of the Freedom of Information Act provides that:

On complaint, the district court of the United States in the district in which the complainant resides, or has [her] principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter *de novo*, and may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section and the burden is on the agency to sustain its action.

5 U.S.C.A. § 552(a)(4)(B) (West 1977 & Supp.1987).

Summary judgment is commonly used to adjudicate FOIA cases. *See, e.g., Miller v. United States Department of State,* 779 F.2d 1378 (8th Cir.1985). However, unlike

---

1. The court dismissed the plaintiff's claims against former defendant William Webster for lack of jurisdiction. *See* Order of February 26, 1986 at 3. The remainder of the defendant's motion to dismiss was denied. *See* Order of May 15, 1986 at 3.

in other civil actions, a decision to grant or deny summary judgment in a FOIA suit does not hinge on the existence of a genuine issue of material fact. *See Hemenway v. Hughes*, 601 F.Supp. 1002, 1004 (D.D.C. 1985). Rather, summary judgment can be granted on the basis of agency affidavits "when the affidavits describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor [sic] by evidence of agency bad faith.'" *Miller v. Casey*, 730 F.2d 773, 776 (D.C.Cir. 1984), quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). *Accord Ely v. Federal Bureau of Investigation*, 658 F.Supp. 615, 617 (C.D.Ill.1987). If all these requisites are met, such affidavits are usually accorded substantial weight. *See, e.g., Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C.Cir.1982); *Taylor v. Department of the Army*, 684 F.2d 99, 106–07 (D.C.Cir.1982); *Allen v. Department of Defense*, 658 F.Supp. 15, 18 (D.D.C.1986). Courts have consistently held that a requester's opinion disputing the risk created by disclosure is not sufficient to preclude summary judgment for the agency, when the agency possessing the relevant expertise has provided sufficiently detailed affidavits. *See, e.g., Gardels*, 689 F.2d at 1006 n. 5.

Rule 56(e) of the Federal Rules of Civil Procedure provides that an affidavit must be based upon the personal knowledge of the affiant, must demonstrate the affiant's competency to testify as to matters stated, and must set forth only facts which would be admissible in evidence. Unsworn declarations, such as the ones filed in the instant case, are also permitted. *See* 28 U.S.C. § 1746. In FOIA cases, the declaration of an agency official knowledgable in the way information is gathered satisfies this personal knowledge requirement. *See, e.g., Spannaus v. United States Department of Justice*, 813 F.2d 1285, 1289 (4th Cir. 1987); *Laborers' International Union v. United States Department of Justice*, 578 F.Supp. 52, 55–56 (D.D.C.1983) (affiant

competent where observations based on review of investigative report and upon general familiarity with the nature of investigations similar to that documented in requested report), *aff'd*, 772 F.2d 919 (D.C. Cir.1984).

■ If a motion is properly supported, summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester. *See Weisberg v. United States Department of Justice*, 705 F.2d 1344, 1350 (D.C.Cir.1983). In order to meet its burden of proof, the agency must prove that each document that falls within the class requested has been produced, or is unidentifiable, or is wholly exempt from the Act's inspection requirements. *See National Cable Television Association, Inc. v. Federal Communications Commission*, 479 F.2d 183, 186 (D.C.Cir. 1973).

■ Based on the record as a whole, the court must make a *de novo* determination of the propriety of the withholding. Once satisfied that proper procedures have been followed and that the information logically falls into the exemption claimed, the court "need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." *Gardels v. Central Intelligence Agency*, 689 F.2d 1100, 1104 (D.C.Cir.1982). The test is not whether the court personally agrees in full with the agency. Rather, the issue is whether on the whole record the agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility. *See Id.* at 1105. If the agency does not meet its burden of demonstrating a logical connection between the information and the claimed exemption, or if the agency affidavit is controverted by contrary evidence, or if there is evidence of bad faith, summary judgment is also available to

plaintiff.[2] *See Goldberg v. United States Department of State*, 818 F.2d 71, 77–78 (D.C.Cir.1987).

It is against these standards that the arguments of the parties and the factual record, discussed below, must be evaluated.

## III. FACTUAL BASIS

### A. *FBI Declarations*

■ In a FOIA case the burden is on the governmental agency to prove that specific documents withheld fit within one of the statutory exemptions found in 5 U.S.C.A. § 552(b) (West 1977 & Supp.1987). To meet this burden and to assist the court in making its determination, the agency must provide detailed justification for its claims of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing. *See Antonelli v. Drug Enforcement Administration*, 739 F.2d 302, 303 (7th Cir. 1984) (per curiam). In this case the FBI has attempted to satisfy its obligation by submitting the declarations of Special Agents Ogden and McCauley as its "*Vaughn*-type index."

The test for determining the adequacy of a *Vaughn* index was set forth in *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C.Cir.1979), where the court required that:

1. the index be contained in one document;

2. the index adequately describe each deletion; and

3. the index state the exemption claimed for each deletion and explain why the exemption is applicable to that deletion.

2. Even though Struth has not moved for summary judgment, a court enjoys the discretion to grant summary judgment to the nonmoving party. *See Mason v. Melandez*, 525 F.Supp. 270, 287 (W.D.Wis.1981).

3. The coded approach works as follows: For every instance in which information was withheld, the documents released have been marked with a four-character code. The first three characters of the code identify the FOIA exemption assertedly authorizing the withholding—for example, (b)(7)(C); the fourth character refers

In this case the index accompanying the documents for *in camera* inspection was submitted in one document, but instead of describing and explaining each deletion, the agency used what it calls a "coded" approach.[3] Despite judicial approval for the "coded" approach in some cases,[4] the Court of Appeals for the District of Columbia Circuit has recently severely criticized this method. In *King v. United States Department of Justice*, 830 F.2d 210 (D.C.Cir. 1987), the issue was whether FBI affidavits submitted in justification for claims of exemption under 5 U.S.C.A. §§ 552(b)(1) & (b)(7) (West 1977 & Supp.1987) were sufficient. After examining the affidavits, the court concluded that "the coded commentary supplies little information beyond that which can be gleaned from context." The court complained that:

> The *Vaughn* index here submitted is, in a word, inadequate—wholly lacking in that specificity of description we have repeatedly warned is necessary to ensure meaningful review of an agency's claim to withhold information subject to a FOIA request. A withholding agency must describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information.

*King v. United States Department of Justice*, 830 F.2d 210 (D.C.Cir.1987) (footnote omitted). The court then remanded the case to the district court suggesting (among other things) that the court conduct an *in camera* inspection. In *Powell v. United States Department of Justice*, 584 F.Supp. 1508 (N.D.Cal.1984), the court also found an FBI "coded" affidavit inadequate, observing that:

to a statement in the code catalog that is offered as a description of the material withheld. Instead of describing the withheld material in detail, the agency merely writes the codes in the margins of copies of the redacted documents.

4. *See Scherer v. Kelley*, 584 F.2d 170, 176–77 (7th Cir.1978), *cert. denied*, 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979) (coded approach adequate); *Branch v. F.B.I.*, 658 F.Supp. 204, 207 (D.D.C.1987) (coded approach adequate).

In fact, the FBI has presented no index at all. Instead, it has placed code symbols next to each deletion in the documents. These symbols correspond to a table which describes a category of information into which the deletion falls, and the affidavits of the Special Agents then supply generalized discussions of why a particular category of information is exempt. It appears that these discussions are broad enough to apply to any FOIA request, and they are in no way tied to the content of the specific deletions.

*Id.* at 1513–14.

Faced with a similar "index," a New York district court concluded that:

Presumably the form adopted by the FBI is the product of its experience and the exigencies of the demands placed upon the agency. However, the connective tissue between the document, the deletion of its description, the exemption and the explanation is missing, and in a number of instances the explanation is of such generality as to constitute in effect merely a repetition of the exemption rather than an explanation. Such an affidavit fails to fulfill the agency's responsibility under FOIA, a responsibility which must be carried out if the statute is to have its desired effect. Only after a careful review by the agency and the disclosure through a *Vaughn* affidavit can the adversarial procedure properly proceed and judicial *de novo* review properly be conducted with deference toward the agency's expertise.

*Donovan v. F.B.I.*, 625 F.Supp. 808, 811 (S.D.N.Y.), *aff'd in relevant part*, 806 F.2d 55 (2d Cir.1986).

■ This court agrees fully with the criticisms and recommendations set forth by the District of Columbia Circuit in *King*. In *Struth*, the declaration submitted by Special Agents Ogden and McCauley provide an insufficient factual basis upon which to predicate a summary judgment decision. Consequently, this court found it necessary to conduct an *in camera* inspection of the documents at issue. *See* Order of May 15, 1986. *See also Antonelli v. Drug Enforcement Administration*, 739 F.2d 302, 303–04 (7th Cir.1984) (per curiam).

Despite the inadequacy of the declarations, the court believes that its inspection of the eighty-eight pages submitted for *in camera* inspection, plus the record as a whole, including the affidavit of the plaintiff and stipulated facts, as set forth below, provide an adequate factual basis for rendering a decision on the summary judgment motion. *See Wright v. Occupational Safety and Health Administration*, 822 F.2d 642, 645–46 (7th Cir.1987).

### B. Struth Affidavit

By way of background, the plaintiff explains that this case arose out of the FBI's 1972–73 monitoring, surveillance, and documentation of her association with the New American Movement (NAM), an organization the FBI believed existed to organize a movement for democratic socialism in the United States. The investigation was part of the FBI's broader COINTELPRO counter-intelligence program. Struth was involved with NAM in San Francisco and engaged in various political activities in connection with her position on the New American Movement Newspaper Collective.

In her affidavit submitted in opposition to the defendant's motion, Struth states that she was a member and officer of NAM and that in her capacity as a NAM officer spoke out frequently to promote feminism, socialism and opposition to the Vietnam war. *See* Plaintiff's November 1982 Affidavit at ¶¶ 2–4. She says she also participated in peaceful demonstrations and was involved in publishing NAM's monthly newspaper. *See Id.* at ¶¶ 5 & 6. Struth asserts that she has never been arrested or convicted of any federal or state crime; that she has never possessed a weapon; that she has never associated with any foreign government; and that she has never traveled outside the United States or maintained a regular correspondence with any foreign government, person or business. *See Id.* at 13 & 14.

During the time she was under investigation in San Francisco, Struth, whose surname was then "Kricker," was employed as a properties director at the American

Conservatory Theater. At the time she filed suit, Struth was employed as the properties director and designer for the Milwaukee Repertory Theater. *See Id.* at ¶¶ 15 & 16. Struth alleges that she has never been engaged in counterintelligence or other clandestine intelligence activities on behalf of foreign governments. *See Id.* at ¶¶ 18 & 19. She also asserts that she had never been involved with any type of information related to national security. *See Id.* at ¶ 20. She points out that the documents she did receive from the FBI indicate that all sources contacted and all criminal checks on her met with negative results. *See Id.* at ¶ 21. Throughout her affidavit, Struth characterizes her activities with NAM as activities lawfully undertaken in the exercise of her First Amendment rights. The defendant has not disputed any statement in Struth's affidavit or offered any evidence placing her allegations in issue.

### C. *Uncontested Facts*

For purposes of the pending summary judgment motion the parties stipulated to the following facts:

1. In 1972 and 1973, the FBI conducted an investigation of the plaintiff, then known as Sandra Kricker, and her activities in an organization called the New American Movement (hereinafter NAM). NAM was a national organization with the stated goal of advancing the movement for democratic socialism within the United States. The plaintiff was a member of NAM's National Interim Committee.

2. The investigation generated approximately 90 pages of documents. Almost all were held in the FBI's San Francisco office and two were held at FBI headquarters in Washington, D.C. Copies of those pages have been filed with the court, marked "Documents 1–14".

3. In 1981, plaintiff made a series of written requests for copies of investigative documents under the Freedom of Information Act (FOIA). These written requests were directed to FBI headquarters, the San Francisco FBI office, and to the Office of Legal Policy of the Department of Justice, appealing the FBI's withholding of certain information.

4. Of the pages concerning the plaintiff, the FBI provided her with some pages in their entirety, provided her with some pages from which certain material had been deleted, and refused to provide her with some pages in their entirety. Pages and portions of pages were withheld based upon a number of provisions of the FOIA, namely 5 U.S.C. §§ (b)(1), (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

5. Richard A. McCauley is an FBI Special Agent who is a supervisor in the Document Classification and Review Section at FBI headquarters. As described in his affidavit, on file in this case, it was his responsibility to review the documents regarding the plaintiff to see if any of them had to be withheld pursuant to subsection (b)(1). His affidavit describes the system established pursuant to Executive Order 12065, found at 3 C.F.R. 190 (1979), under which a determination is made as to whether information falls within subsection (b)(1)'s prohibition of disclosure.

6. Agent McCauley reviewed the documents pertaining to plaintiff. In each instance in which he deleted a page or part of a page for national security reasons, Agent McCauley provided a notation of (b)(1), to indicate the FOIA exclusion, followed by C1, C2, C3, C4, C5, C6, or C7 to indicate the particular basis for concluding that the information deleted fell under 1–301(c) of Executive Order 12065.

7. Douglass C. Ogden is an FBI Special Agent who is a supervisor in the Freedom of Information—Privacy Act Section, Records Management Division at FBI headquarters. As described in his affidavit, on file in this case, it was the responsibility of his section to review the documents pertaining to the plaintiff to see if any of them had to be withheld pursuant to subsections (b)(2) through (b)(7) of the FOIA. Agent McCauley's affidavit describes the FBI's system of identifying the precise justification for deleting material under any FOIA subsection. The justification for any dele-

tion is coded with numbers and letters which refer to the system of justifications set out in Agent Ogden's affidavit.

8. In each instance in which a page, or part of a page was deleted under (b)(2) or (b)(7), the FBI provided a notation of the FOIA exclusion followed by numbers or letters referring to the coded system of justifications described in Agent Ogden's affidavit.

Stipulated Uncontested Facts at 1–4 (filed April 15, 1986).

## IV. DISCUSSION

■ The law which must be applied to these facts to resolve this summary judgment motion is found in the Freedom of Information Act (FOIA), 5 U.S.C.A. § 552 (West 1977 & Supp.1987). Congress enacted FOIA to open agency action to the light of public scrutiny. The Act was designed to provide a workable and balanced formula making available information that ought to be public, while at the same time protecting information that must remain confidential in order to protect legitimate government functions. *See Department of the Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976). Pursuant to this scheme, the Act states that a document may be withheld from the public only if the information contained in the document falls within one of the nine statutory exemptions set forth in 5 U.S.C.A. § 552(b) (West 1977 & Supp.1987). Because the dominant objective of the Act is disclosure, not secrecy, these exemptions are explicitly made exclusive and are to be narrowly construed. *See Rose*, 425 U.S. at 361, 96 S.Ct. at 1599.

The district court must review the exemptions claimed *de novo*, and the burden is on the government to establish that the exemptions are justified. *See* 5 U.S.C.A. § 552(a)(4)(B) (West 1977 & Supp.1987). Where, as here, the court is confronted with conclusory claims of exemption in the agency's affidavits, "it is critical for the court to determine whether the information sought is as the government describes it." *Ferri v. Bell*, 645 F.2d 1213, 1222 (3d Cir. 1981). *See also Coastal States Gas Corporation v. Department of Energy*, 644 F.2d 969, 982 n. 65 (3d Cir.1981).

### A. *Exemption 1: National Security*

■ FOIA's Exemption 1, 5 U.S.C.A. § 552(b)(1) (West 1977 & Supp.1987), protects from disclosure matters that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." *Id.* In his 1982 declaration, Agent McCauley states that Executive Order (E.O.) 12065, signed by President Carter in June of 1978 (effective December 1, 1978), was the Executive Order that applied to the protection of national security information when he conducted his review of the Struth documents.[5] *See* Declaration of Richard A. McCauley Addressing the Application of Exemption One of the Freedom of Information Act at 3. McCauley explains that, after following certain regulations and procedures in reviewing the materials,

---

**5.** Executive Order 12065, 3 C.F.R. 190 (1979), was revoked on August 1, 1982. *See* Defendant's Response to Plaintiff's Second Set of Interrogatories at ¶ 51 (June 3, 1985). It was succeeded by Executive Order 12356, 3 C.F.R. 166 (1983), which is more restrictive to the requester because it eliminates the requirement that the government apply a balancing test based on the interest in disclosure and possible harm to national security.

While courts apply the Executive Order which was in effect when the classifying official finally acted, *see Lesar v. United States Department of Justice*, 636 F.2d 472, 480 (D.C.Cir.1980), the agency has the power to reclassify at any time. *Id. Accord King v. United States Department of Justice*, 850 F.2d 210 (D.C.Cir.1987). The agen-

cy may also apply a new Executive Order which becomes effective during the pendency of a lawsuit, since to deny it that power would defeat the purpose of the FOIA exemption by forbidding the government from responding to changes in national security needs. *See Afshar v. Department of State*, 702 F.2d 1125, 1136 (D.C.Cir.1983). Executive Order 12065 contained, with some qualifications, an automatic declassification schedule of six years for all documents except those marked "top secret." Executive Order 12356 removed the automatic declassification schedule and left the decision to declassify to the discretion of agency officials. It is not clear whether the documents at issue in this case were reclassified pursuant to Executive Order 12356.

he concluded that two documents (serials 2 and 4 of San Francisco file 100–73463) contained information falling into one of the classified categories set forth in E.O. 12065, § 1–301: intelligence activities, sources, or methods. *See Id.* at 2–8. McCauley adds that "any reasonably segregable portions of classified documents that did not require protection under E.O. 12065 have been declassified and marked for release unless withholding was otherwise warranted under applicable law." *Id.* at 7.

It appears from the coded documents submitted for *in camera* inspection that Exemption 1 is no longer being applied to these documents. The government has not provided any explanation, but there are no longer any (b)(1) codes on any of the serial 2 or 4 documents and there is no key to (b)(1) codes provided in the "Coded Category" explanation furnished with the documents submitted for inspection. The formerly classified documents bear markings stating that they were declassified in 1985. Nevertheless, the identical portions of the documents are still marked as being exempt from disclosure under other FOIA exemptions. Therefore, the court sees no reason to rule on the validity of withholding information pursuant to Exemption 1.

### B. *Exemption 2: Internal Rules and Practices*

FOIA's Exemption 2 exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C.A. § 552(b)(2) (West 1977 & Supp.1987). The Supreme Court has interpreted this exemption narrowly, holding that it applies only to "routine matters" of "merely internal significance" in which "the public could not reasonably be expected to have an interest." *Department of the Air Force v. Rose,* 425 U.S. 352, 369–70, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976).

In its explanation accompanying the documents submitted for inspection, the defendant points out that:

This exemption was utilized to delete FBI symbol numbers and file numbers which are used internally by the FBI to identify confidential sources. Disclosure of this type of information may allow an individual to analyze this data and thus identify sources of information for whom the (b)(7)(D) exemption was asserted. Such identification would negate the protection afforded this information pursuant to the use of the (b)(7)(D) exemption. This exemption is used sparingly and only where it is logically determined that harm can result to the FBI's investigative function. These administrative markings do not pertain to plaintiff and have no effect on the substance of the document.

The court, having examined the approximately fourteen redactions marked with the (b)(2) code, finds that all the deletions made pursuant to this exemption were actually of source symbol numbers or source file numbers. As such, they were properly withheld unless the court finds that the public interest in disclosure outweighs the privacy interests at stake. *See Lesar v. United States Department of Justice,* 636 F.2d 472, 486 (D.C.Cir.1980). In this case the plaintiff has not challenged the Exemption 2 deletions and has offered no evidence of a public interest in disclosure. Therefore, the court finds that the redactions were proper. *See Branch v. F.B.I.,* 658 F.Supp. 204, 208 (D.D.C.1987).

### C. *Exemption 7: Information in Law Enforcement Files*

The most frequently used exemption in the Struth documents is that for information contained in law enforcement files. Under FOIA's Exemption 7, documents may be withheld from disclosure if they are:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information.... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished infor-

mation on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law,....

5 U.S.C.A. § 552(b)(7)(C)–(E) (West 1977 & Supp.1987).

The threshold question that must be addressed under this exemption is whether the documents at issue are "records or information compiled for law enforcement purposes."

In his declaration, Agent Ogden explains that:

The investigations reflected in the above references were conducted for law enforcement purposes to determine if the activities of the plaintiff or subject of the documents were in violation of but not limited to, one or more of the following statutes:

Title 18, U.S.C., Section 371 (Conspiracy)

Title 18, U.S.C., Section 1361 (Destruction of Government Property)

Title 18, U.S.C., Section 2101 (Antiriot)

Declaration of Douglass C. Ogden at 9–10.

The plaintiff, on the other hand, contests these assertions. Struth maintains that the FBI has not met the threshold requirement of establishing that the investigatory records at issue were compiled for law enforcement purposes and points out that there is no evidence of any pending or prior enforcement proceedings undertaken as an outgrowth of the investigation. Struth asserts that she has never been arrested or convicted of any state or federal crime and points out that one of the documents dis-

closed—a memorandum report dated February 15, 1973—states that she had been found not to meet ADEX (agency's investigation list) criteria and that:

All logical investigation has been conducted with no background information having been developed re Subject. It is felt that further investigation at this time would be unproductive.

She further alleges that the investigation itself amounted to unconstitutional interference with her rights under the First Amendment and contends that these circumstances indicate that the investigation was not conducted "for law enforcement purposes." Under this reasoning, Exemption 7 would not apply to the documents as a threshold matter; therefore, the information redacted thereunder would have to be disclosed.

For the purposes of the Exemption 7 threshold, however, courts have held that a law enforcement agency like the FBI "need only be held to a minimal showing that the activity which generated the documents was related to the agency's function." *Dunaway v. Webster*, 519 F.Supp. 1059, 1076 (N.D.Cal.1981). As long as the agency's basis for the "rational nexus" is not "pretextual or wholly unbelievable," a court "should be hesitant to second guess a law enforcement agency's decision to investigate if there is a plausible basis for its decision." *Pratt v. Webster*, 673 F.2d 408, 421 (D.C.Cir.1982).

The Ninth Circuit has held that law enforcement agencies such as the FBI should be accorded special deference when the court makes an Exemption 7 threshold determination. *See, e.g., Binion v. United States Department of Justice*, 695 F.2d 1189, 1193 (9th Cir.1983). The First Circuit allows a similar construction:

We have previously noted that "the investigatory records of law enforcement agencies are inherently records compiled for 'law enforcement purposes' within the meaning of Exemption 7." *Irons v. Bell*, 596 F.2d 468, 475 (1st Cir.1979).[6]

---

6. The court in *Irons* noted three policy reasons for adopting its broad construction of the "law enforcement purposes" requirement of Exemption 7. First, the court observed that if the unjustified nature of an FBI investigation made Exemption 7 inapplicable, material constituting

The FBI is such an agency. *See Id.* at 474–75. Indeed, in respect to Exemption 7, Congress has evinced "special willingness to protect FBI confidentiality." *Id.* at 475. Thus, there is no legitimate room to doubt that the Bureau's files, generally, bask under this prophylactic umbrella.

*Curran v. Department of Justice,* 813 F.2d 473, 475 (1st Cir.1987). *Accord Irons v. F.B.I.,* 811 F.2d 681, 685–86 (1st Cir. 1987); *Kuehnert v. F.B.I.,* 620 F.2d 662, 665–67 (8th Cir.1980). *But see Vymetalik v. F.B.I.,* 785 F.2d 1090, 1095 (D.C.Cir.1986) ("FBI records are not law enforcement records (under FOIA) simply by virtue of the function that the FBI serves"). The Seventh Circuit follows the per se approach and has also held that intelligence and counterintelligence records are presumptively compiled for law enforcement purposes. *See Stein v. Department of Justice and Federal Bureau of Investigation,* 662 F.2d 1245, 1260–61 (7th Cir.1981).

Struth's argument that she was never arrested or charged does not make out a case of pretext. Simply because the agency eventually concluded that Struth was not a threat does not indicate that the agency *never* had reason to investigate her. Indeed, many investigations that are unarguably legitimate still do not result in any indictment or conviction. *See Pratt,* 673 F.2d at 421 ("Nor is it necessary for the investigation to lead to a criminal prosecution or other enforcement proceeding in order to satisfy the 'law enforcement purpose' criterion.") *See also Stern v. F.B.I.,* 737 F.2d 84, 90 (D.C.Cir.1984); *Ingle v. Department of Justice,* 698 F.2d 259, 269 (6th Cir.1983); *Rural Housing Alliance v. United States Department of Agriculture,* 498 F.2d 73, 79 (D.C.Cir.1974). The

FBI has a broad mandate to conduct internal security and criminal investigations. To hold that these investigations are necessarily improper unless they lead to an indictment would be charging the agency with the gift of prophecy.

Moreover, courts have held that Exemption 7 applies even to investigations of questionable legality. *See, e.g., Lesar v. United States Department of Justice,* 455 F.Supp. 921, 924 (D.D.C.1978), *aff'd,* 636 F.2d 472 (D.C.Cir.1980). In *Pratt v. Webster,* the District of Columbia Circuit dealt with documents relating to a COINTELPRO investigation of the Black Panther Party that revealed "questionable actions by the FBI to foment distrust and suspicion and to create and enhance dissention" within the group. *Pratt,* 673 F.2d at 422. Yet, the court held that the Exemption 7 threshold was met and that the questionable investigatory techniques did not negate the law enforcement purpose of the investigation. The court emphasized that "[w]hile the methods frequently used by the FBI in its COINTELPRO activities offer a ready distinction from more typical means of law enforcement, FOIA Exemption 7 *refers to purposes rather than methods.*" *Id.* at 423 (emphasis in original).

In view of these considerations, the court rules that there was enough of a law enforcement purpose to the investigation of the plaintiff to meet the liberal Exemption 7 threshold for a prima facie showing and that this showing has not been successfully rebutted or controverted by the plaintiff.[7] However, in order to delete information based on Exemption 7, the government must still meet its burden of showing that the other requirements contained on the exemption's subsections have been met.

---

an unwarranted invasion of personal privacy would be subject to disclosure, with resultant harm to innocent individuals. *Id.* at 474. Second, "the loss of Exemption 7 due to unwarranted FBI activity would cost the society the cooperation of those who give the FBI information under an express assurance of confidentiality," without any concomitant benefit. *Id.* Third, interpreting the statute to require a showing of bona fide law enforcement purposes would force on district courts the unmanageable burden of "second or third guess(ing) the judgment

of a Special Agent in Charge that an investigation was warranted." *Id.*

7. In *King v. United States Department of Justice,* 830 F.2d 210 (D.C.Cir.1987), the court said that to prevail on this issue the plaintiff would have to underpin her allegations with sufficient evidence of intrusive conduct to raise an inference of harassment or intimidation or with direct evidence of impermissible motive.

### 1. *Exemption 7(C): Invasion of Privacy*

FOIA's Exemption 7(C), as amended by the Freedom of Information Reform Act of 1986, permits the deletion of the identities of persons mentioned in law enforcement files if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[8] 5 U.S.C.A. § 552(b)(7)(C) (West 1977 & Supp.1987). The FBI's showing under the amended statute, which in part replaced "would" with "could reasonably be expected to," is to be measured by a standard of reasonableness, which takes into account the "lack of certainty in attempting to predict harm" while providing an objective test. *See* S.Rep. No. 98–221, 98th Cong., 1st Sess. 24 (1983). In judging an Exemption 7(C) claim, courts have uniformly held that the district court must conduct a *de novo* review, balancing the degree of the invasion of personal privacy against the public interest in disclosure. *See Miller v. Bell,* 661 F.2d 623, 629 (7th Cir.1981), *cert. denied sub nom. Miller v. Webster,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982); *Lesar v. United States Department of Justice,* 636 F.2d 472, 485–86 (D.C.Cir. 1980). As with all exemptions under FOIA, the agency bears the burden of proof on the balancing issue. *See* 5 U.S.C. § 552(a)(4)(B).

Here, the FBI has asserted Exemption 7(C) with respect to four coded categories:

| | |
|---|---|
| (b)(7)(C)/(1) | Identifying information of FBI personnel |
| (b)(7)(C)/(2) | Information about third parties who are mentioned in FBI investigative files |
| (b)(7)(C)/(3) | Identities of individuals who are of investigative interest to the FBI |
| (b)(7)(C)/(4) | Identities of third parties who provided information |

Declaration of Douglass C. Ogden at 13.

#### (a) *Code (b)(7)(C)/(1)*

Approximately twenty redactions of the names of FBI personnel were made pursuant to Code (b)(7)(C)/(1). Courts have consistently recognized that FBI agents have a significant privacy interest in nondisclosure of their names. Consequently, deletion of their names has usually been upheld in the context of FOIA litigation. *See, e.g., Stern v. F.B.I.,* 737 F.2d 84, 92–94 (D.C.Cir.1984); *Miller v. Bell,* 661 F.2d 623, 629–31 (7th Cir.1981), *cert. denied sub nom. Miller v. Webster,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982); *Lesar v. United States Department of Justice,* 636 F.2d 472, 487–88 (D.C.Cir.1980); *Nix v. United States,* 572 F.2d 998, 1005–06 (4th Cir.1978); *Ferguson v. Kelly,* 455 F.Supp. 324, 327 (N.D. Ill.1978). These decisions generally rest on the recognition that FBI employees have a privacy interest in avoiding harassment and annoyance in their official and private lives and that the public interest in the disclosure of their names is usually minimal. *See Lesar,* 636 F.2d at 487.

Several decisions ruling on redactions under Exemption 7(C) have held that where there is misconduct or illegal behavior by supervisory personnel, such behavior might generate a sufficient public interest to override the privacy interests of the supervisory agents. *See, e.g., Stern,* 737 F.2d at 93–94; *Lesar,* 636 F.2d at 486–87. In the instant case there is no indication in the record as to whether any of the FBI personnel whose names have been excised are supervisory personnel. The only specific instance of questionable conduct of which Struth has personal knowledge is her allegation that two FBI agents who came to

---

**8.** The former version of FOIA's Exemption 7(C) exempted matters which "constitute an unwarranted invasion of personal property." Even though this was the version of 5 U.S.C. § 552(b)(7)(C) which was in effect when this lawsuit was filed, the current version of Exemption 7(C) governs this decision. Section 1804 of Pub.L. 99–570 provides that:

(a) The amendments made by section 1802 [amending subsecs; (b)(7), (c) and (d) of this section] shall be effective on the date of enactment of this Act [Oct. 27, 1986], and shall apply with respect to any requests for records, whether or not the request was made prior to such date, and shall apply to any civil action pending on such date.

Freedom of Information Reform Act of 1986, Pub.L. No. 99–570, 1986 U.S.Code Cong. & Ad. News (100 Stat. 3207) 10A.

Neither of the parties brought this change in the law to the attention of the court or requested rebriefing following the change.

her home in 1972 misrepresented their identities. *See* Plaintiff's November 1982 Affidavit at ¶ 22. It is apparent from the affidavit, however, that Struth was not deceived or tricked into divulging any information. Shortly after this contact, the investigation of her was dropped.

 In order to prevail on a claim seeking disclosure of FBI agents' identities, the plaintiff must persuade the court that there is a substantial countervailing public interest in disclosure. *See Antonelli v. F.B.I.*, 721 F.2d 615, 619 (7th Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). The plaintiff has made no attempt to prove any such interest. Accordingly, based on the factual record of this case, the court finds that the balance weighs in favor of the privacy interests of the FBI personnel and the court will not order that the deletions of their names or other identifying material be disclosed.

### (b) *Code (b)(7)(C)/(2)*

Approximately eight deletions were made pursuant to Code (b)(7)(C)/(2). All of these redactions are of the same name. In attempting to justify the deletions made under exemption (b)(7)(C)/(2), the FBI explains that:

> Exemption (b)(7)(C) was used to delete the names and identifying data concerning individuals who were mentioned during the course of interviews or contacts with third parties. These individuals are insignificant to the investigation and to plaintiff or the public's interest. They have little or no direct connection to plaintiff or the public's interest. They have little or no direct connection to plaintiff other than, perhaps coming into contact with her in the course of their daily business, or having heard of her because of her various activities. Disclosure of their identities would in no way assist plaintiff in her endeavors. Their

right to privacy under exemption (b)(7)(C) outweighs the minimal public interest which would be served by releasing their names and thus subjecting them to possible harassment or criticisms which could result from having it known publicly that they were mentioned in an FBI investigative file.

Declaration of Douglass C. Ogden at 21–22.

 It is difficult for the court to believe that Agent Ogden had closely examined these documents when he described the person whose name was deleted[9] as "insignificant" to the plaintiff or having "no connection" to the plaintiff. The FBI has not met its burden of justifying nondisclosure of these deletions pursuant to Code (b)(7)(C)/(2). Furthermore, the FBI's position is inconsistent because the individual's name is not deleted where it appears at least twice on one of the same documents at issue. Therefore, the court rules that this material was improperly redacted and, if none of the other exemptions discussed below apply, will order that it be disclosed.

### (c) *Code (b)(7)(C)/(3)*

The FBI has redacted information in the files pertaining to third parties who were also the subject of investigations. Approximately ninety-seven of these deletions are coded (b)(7)(C)/(3), which indicates that the names of the third parties deleted are names of persons in whom the FBI had an investigatory interest in 1972 and 1973.

In attempting to meet its burden of justifying these deletions, the FBI explains that:

> During the course of FBI investigations, information is often developed and recorded concerning individuals other than the person who is the subject or focal point of the investigation. An example of such a person would be an individual known to be an associate or acquaintance of the subject of the inves-

---

**9.** At least six of the redactions are of a name of a person whose name is identical to that of the person whose name was deleted pursuant to Code (b)(7)(C)/(2). These redactions appear on page 1 of document 100–73463–7 and on page 1 of document 100–73463–10. If this person was determined to be the same person later identified on page 2 of document 100–73463–10, the court will order the information to be disclosed. *See Katz v. Department of Justice,* 498 F.Supp. 177, 181 (S.D.N.Y.1979).

tigation. Such an associate may be of investigative interest to the FBI as a possible suspect in an [sic] criminal matter, a potential witness to criminal activity, or as a source of information regarding the whereabouts or activities of the subject of the investigation. Frequently, a considerable amount of background information is compiled regarding such associates and individuals other than the subject of the investigation.

The FBI has a responsibility to protect the privacy rights of individuals pursuant to the PA [Privacy Act] of 1974; the FBI cannot disseminate information gathered during the course of an investigation to persons not legally entitled to receive such information. To release to plaintiff certain information about third parties appearing in our files would reveal that those persons were of interest to the FBI or that they were in some way connected with an FBI investigation. This would be an unwarranted invasion of personal privacy, because it might subject these individuals to unnecessary public attention, harassment, or criticism. Since the FBI has no means of controlling the use made of information released pursuant to the FOIA request, once such rights are breached by disclosure, they are lost forever. In addition, the FBI's investigation into the activities of these third party subjects is in no way related to plaintiff's request which is for information pertaining to herself.

In making a determination in the instant case whether to release the names and the identifying data of third parties and information (such information includes third party file numbers and/or personal information concerning a third party) about them to the plaintiff, an attempt was made to balance the public's right to know against the individual's right to personal privacy. Where the information was publicly known or was innocuous, it was disclosed. Where it was determined that the release of certain information would announce to the world that an individual was a target of an FBI investigation and, therefore, permit derogatory inferences to be drawn therefrom, the information, the name, the identifying data and other third party information was deleted to protect his/her privacy. Where any information was highly personal, defamatory or embarrassing to the third person, it also was withheld pursuant to exemption (b)(7)(C).

Declaration of Douglass C. Ogden at 22–24.

The court has examined each of the deletions made pursuant to Code (b)(7)(C)/(3) and has satisfied itself that each masks the name or identification of an individual. File numbers accompanying certain of the names indicate that these persons were the subject of investigatory interest. This finding necessitates the next step, which is to weigh the individuals' interest in privacy against the public's interest in disclosure. *See Stern v. F.B.I.*, 737 F.2d 84, 91 (D.C. Cir.1984); *Miller v. Bell*, 661 F.2d 623, 631–32 (7th Cir.1981), *cert. denied sub nom. Miller v. Webster*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982). "Unlike exemption 6, which permits nondisclosure only when a document portends a '*clearly unwarranted* invasion of personal privacy,' exemption 7(C) does not require a balance tilted emphatically in favor of disclosure." *Bast v. United States Department of Justice*, 665 F.2d 1251, 1254 (D.C.Cir.1981).

In the balancing process, it is the interest of the general public, not that of the private litigant, which must be considered. *See Brown v. F.B.I.*, 658 F.2d 71, 75 (2d Cir.1981). As the Ninth Circuit has observed: "The purpose of the FOIA is to serve disclosure of federal agency activity, not as a means for private parties to find out what facts or opinions foreign, state or local law enforcement agencies have collected or made on them." *Church of Scientology v. United States Department of Justice*, 612 F.2d 417, 427 (9th Cir.1979). That the primary motive may be personal is not a fatal blow if there is a coincidental public purpose sufficient to overcome the factors weighing against disclosure. *Kiraly v. F.B.I.*, 728 F.2d 273, 279 (6th Cir. 1984). However, in Struth's case no public purpose of any kind has been suggested. By contrast, the privacy interest of the

third parties who were the targets of FBI investigations is compelling. As other courts have noted:

> There can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of FBI investigation.

*Republic of New Afrika v. F.B.I.*, 656 F.Supp. 7, 11 (D.D.C.1985), quoting *Fund for Constitutional Government v. National Archives*, 656 F.2d 856, 864 (D.C.Cir. 1981). Furthermore, the passage of time (in this case, at least fourteen years) or the termination of the investigation does not extinguish the privacy interests. *See King v. United States Department of Justice*, 830 F.2d 210 (D.C.Cir.1987); *Brant Construction Company v. United States Environmental Protection Agency*, 778 F.2d 1258, 1265 n. 8 (7th Cir.1985); *Allen v. Department of Defense*, 658 F.Supp. 15, 23 (D.D.C.1986).

■ Given this record, the court finds that the interest in privacy outweighs the public interest and will not order that the names or identities of the FBI targets withheld under Exemption (b)(7)(C)/(3) be disclosed. *See Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1977).

### (d) Code (b)(7)(C)/(4)

Throughout the eighty-eight pages of documents inspected, the court found no actual deletions marked with Code (b)(7)(C)/(4). The fact that Agent Ogden bothered to devote a page and a half to justifying nonexistent exemptions under this category indicates that he submitted a form affidavit and made an insufficient effort to tailor it to the case at hand.

### 2. Exemption 7(D): Confidential Sources

■ FOIA's Exemption 7(D), as amended by the Freedom of Information Reform Act of 1986, applies to matters that "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." [10] 5 U.S.C.A. §§ 552(b)(7)(D) (West 1977 & Supp.1987). While, as noted above, the FOIA generally "is in favor of disclosure." *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), the subsection 7(D) exemption is also a part of the FOIA and evinces Congress' decision that there are "types of information that the Executive Branch must have the option to keep confidential." *Id.*, quoting *EPA v. Mink*, 410 U.S. 73, 79–80, 93 S.Ct. 827, 832–833, 35 L.Ed.2d 119 (1973). Thus, this exemption need not be construed narrowly because, in enacting it, Congress displayed an intent to preserve, not destroy, confidentiality in certain necessary situations. *See Church of Scientology of California v. United States Department of Justice*, 612 F.2d 417, 426 (9th Cir.1979).

This exemption really consists of two separate exemptions—one for the *identity* of a confidential source, and the other for *information* furnished by the confidential

---

**10.** The former version of FOIA's Exemption 7(D) exempted matters which "disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source." Even though this was the version of 5 U.S.C. § 552(b)(7)(D) which was in effect when this lawsuit was filed, the current version of Exemption 7(D) governs this decision. Section 1804 of Pub.L. 99–570 provides that:

> (a) The amendments made by section 1802 [amending subsecs. (b)(7), (c) and (d) of this section] shall be effective on the date of enactment of this Act [Oct. 27, 1986], and shall apply with respect to any requests for records, whether or not the request was made prior to such date, and shall apply to any civil action pending on such date.

Freedom of Information Reform Act of 1986, Pub.L. No. 99–570, 1986 U.S.Code Cong. & Ad. News (100 Stat. 3207) 10A.

source. *See Duffin v. Carlson*, 636 F.2d 709, 712 (D.C.Cir.1980). In this case the FBI has asserted Exemption 7(D) with respect to five coded categories:

| | |
|---|---|
| (b)(7)(D)/(1) | Source symbol numbers or source file numbers |
| (b)(7)(D)/(2)(A) | Information provided under an implied assurance of confidentiality which if disclosed would tend to identify an individual as the source of information withheld |
| (b)(7)(D)/(2)(B) | Information provided under an expressed assurance of confidentiality which if disclosed would tend to identify an individual as the source of information withheld |
| (b)(7)(D)/(3) | Information from established sources on a regular basis |
| (b)(7)(D)/(4) | Information from a financial or commercial institution |

Declaration of Douglass C. Ogden at 26–32.

In order to qualify for any exemption under Exemption 7(D), the deletion must involve a "confidential source." Agent Ogden has stated that all the "sources" at issue in this case were given express or implied assurances of confidentiality. This is sufficient to meet the minimal burden the Seventh Circuit places on law enforcement agencies to establish that a source is "confidential." After reviewing FOIA's legislative history, the court of appeals has stated that:

> Unless there is evidence to the contrary in the record, we believe such promises of confidentiality are inherently implicit in FBI interviews conducted pursuant to a criminal investigation. This is necessary not only to protect the individual interviewee, but also to insure the continuing efficacy of FBI criminal investigation.

*Miller v. Bell*, 661 F.2d 623, 627 (7th Cir. 1981), *cert. denied sub nom. Miller v. Webster*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982). *Accord Donovan v. F.B.I.*, 806 F.2d 55, 61 (2d Cir.1986); *Johnson v. United States Department of Justice*, 739 F.2d 1514, 1518 (10th Cir.1984); *Ingle v. Department of Justice*, 698 F.2d 259, 269 (6th Cir.1983). Under this "functional approach," an implicit promise of confidentiality may be found when "it is apparent that the agency's investigatory function depends for its existence upon information supplied by individuals who in

many cases would suffer severe detriment if their identities were known." *Diamond v. F.B.I.*, 707 F.2d 75, 78 (2d Cir.1983) (quoting *Lamont v. Department of Justice*, 475 F.Supp. 761, 779 (S.D.N.Y.1979)), *cert. denied*, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984).

Having reviewed the documents containing information purportedly supplied by a "confidential source," the court notes that the source or sources are not named, but have been given identifying numbers. This supports the defendant's contention that the sources were given express assurances that their names would not be revealed. Moreover, Struth has failed to provide any evidence that the sources were anything other than confidential. Thus, because there is nothing in the record to refute Agent Ogden's declaration, the court finds that the information redacted pursuant to Exemption 7(D) does involve confidential sources. *See Ely v. Federal Bureau of Investigation*, 658 F.Supp. 615, 618 (C.D. Ill.1987).

**(a) *Code (b)(7)(D)/(1)***

██ Once it is apparent that a record involves a confidential source, the Exemption 7(D) threshold has been met and the name of the source and information tending to disclose his or her identity may be deleted from the record. Nothing further is required to support a redaction. Judicial balancing of the equities is not an appropriate exercise in considering a 7(D) claim. *See Brant Construction Company v. United States Environmental Protection Agency*, 778 F.2d 1258, 1265 (7th Cir.1985). Accordingly, the court finds that the FBI was justified in deleting from the Struth records (pursuant to Code (b)(7)(D)/(1)) approximately twelve symbol numbers and file numbers which could tend to identify a confidential source.

**(b) *Code (b)(7)(D)/(2)***

The court could find no redactions made pursuant to Codes (b)(7)(D)/(2)(A) or (2)(B). The fact that Agent Ogden devoted two and one half pages attempting to justify exemptions which were not made does not enhance the credibility of his affidavit.

### (c) Code (b)(7)(D)/(3)

Approximately fifty-eight excisions were made pursuant to Code (b)(7)(D)/(3). This Code subsection derives from the second prong of Exemption 7(D) which permits an agency to withhold all records or information furnished by a confidential source:

1. to a criminal law enforcement authority in the course of a criminal investigation; or
2. to an agency conducting a lawful national security intelligence investigation.

*See* 5 U.S.C.A. § 552(b)(7)(D) (West 1977 & Supp.1987). Most of the FBI's redactions marked by this Code occur throughout document 100–73463–4. This entire forty-page document has been withheld, in part, on the ground that it is information furnished by a confidential source.[11] Agent Ogden explains that this withheld information was received from sources "from whom information was regularly received under an expressed assurance of confidentiality" and that:

This information was received with the understanding that it would be held in the strictest confidence. These sources are informants within the common meaning of that term and not merely conscientious or cooperative citizens. Illustrative of an expressed assurance of confidentiality, is the manner in which we treat such information within the FBI. The identity of these sources is so sensitive that they are usually not referred to by name in the FBI document which records the information they furnished. The identities of these individuals .are known to very few FBI employees and are available on a "need to know" basis only. These special precautions are needed because of the sensitive nature of the information being received and the possible harm that may befall these persons if their identities are revealed. The

manner in which the FBI actually obtains information from these sources is also demonstrative of the expressed assurance of confidentiality under which it was received. The information is received only at locations and under conditions which guarantee the contact will not be noticed. It is only with the understanding of complete confidentiality that the aid of such people can be enlisted and only through this confidence that such individuals can be persuaded to continue providing valuable assistance in the future.

As has been stated earlier, wherever information received from a source would not identify the source, the information has been left in the document and furnished to plaintiff.

Declaration of Douglass C. Ogden at 30–31.

 It is not clear from this explanation whether the FBI is seeking to protect the identity of an informant or the information furnished by the informant. Contrary to the FBI's declaration, the agency made no attempt to segregate and delete only that information which would identify the source. Instead, the source's information was withheld in its totality. Nevertheless, complete redactions of information supplied by confidential sources are permitted under Exemption 7(D). Even before the Freedom of Information Reform Act of 1986 deleted the requirement that information properly withheld under this subsection had to be furnished "only" by a confidential source, the Seventh Circuit had construed Exemption 7(D) broadly to cover all the information a confidential source supplies without further inquiry. *See Kimberlin v. Department of Treasury*, 774 F.2d 204, 207–09 (7th Cir.1985); *Terkel v. Kelly*, 599 F.2d 214, 216 (7th Cir.1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). *See also Shaw v. F.B.I.*, 749 F.2d 58, 62 (D.C.Cir.1984); *Radowich v. United*

---

**11.** Each of these forty pages is also marked with Code (b)(7)(C)/(3), indicating that the persons named are known to be associates or acquaintances of the subject of the investigation. The Ogden declaration states that these persons "were of interest to the FBI" or "were in some way connected with an FBI investigation." Dec-laration of Douglass C. Ogden at 23. Throughout document 100–73463–4 this Code is not connected to a particular name, but is merely written in the margin—usually only once on a page. Thus, the court is not able to determine how many of the names mentioned fall into this coded category.

*States Attorney, District of Maryland,* 658 F.2d 957, 964–65 (4th Cir.1981) (exemption protects all information furnished by a confidential source irrespective of whether the information in whole or in part might have been available from some other source); *Lame v. United States Department of Justice,* 654 F.2d 917, 924 (3d Cir.1981); *Duffin v. Carlson,* 636 F.2d 709, 712 (D.C.Cir.1980); *Nix v. United States,* 572 F.2d 998, 1004 (4th Cir.1978). Under this prong of Exemption 7(D), any inquiry into whether the information withheld would identify a confidential source is not relevant. *See Johnson v. United States Department of Justice,* 739 F.2d 1514, 1517–18 (10th Cir.1984). This broad interpretation of Exemption 7(D) is grounded in the FOIA's legislative history, including the statement of Senator Phillip Hart, who introduced the amended version of Exemption 7 prior to passage of the Freedom of Information Act and Amendments of 1974. Senator Hart explained that:

> The agency not only can withhold information which would disclose the identity of a confidential source but also can provide blanket protection for any information supplied by a confidential source..... [A]ll the FBI has to do is to state the information was furnished by a confidential source and it is exempt.

Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Source Book, Legislative History, Texts and Other Documents, Joint Committee Print, 94th Cong., 1st Sess. 332.

 Having already found that the information the FBI seeks to withhold under Exemption 7(D) was furnished by a confidential source, the court must also determine whether the information marked by Code (b)(7)(D)/(3) was compiled (1) by a criminal law enforcement authority in the course of a criminal investigation, or (2) by an agency conducting a lawful national security intelligence investigation. As discussed in Part IV(A), above, it appears that the FBI has abandoned its claim of exemption on the ground that this information was gathered during a "lawful" national security intelligence investigation. Instead, the Bureau relies on Agent Ogden's

declaration that the information was compiled during a criminal investigation into whether Struth had violated federal statutes prohibiting conspiracy, destruction of government property, and riot. *See* Declaration of Douglass C. Ogden at 9–10. This declaration meets the defendant's burden of making a minimal showing that a particular individual is the object of its investigation and that there is a connection between that individual and a possible violation of federal law. *See Pratt v. Webster,* 673 F.2d 408, 420 (D.C.Cir.1982). The burden then shifts to the plaintiff to produce persuasive evidence that in fact another, nonqualifying reason prompted the investigation. *See Shaw v. F.B.I.,* 749 F.2d 58, 63–64 (D.C.Cir.1984). In this case, the plaintiff has suggested that the investigation was a pretext aimed at chilling her exercise of her First Amendment rights rather than uncovering her participation in criminal activity, but this charge is wholly devoid of any support in the record. It is undisputed that Struth was never arrested or indicted for any violation. However, as explained above, an investigation need not result in enforcement proceedings to merit Exemption 7(D) protection. *See* Part IV(C), *supra.* Nor does the termination of an investigation remove the exemption. *See Rural Housing Alliance v. United States Department of Agriculture,* 498 F.2d 73, 80 (D.C.Cir.1974).

In Part IV(C), above, the court found that the FBI met its threshold burden of showing that Exemption 7 was properly applied to information "compiled for law enforcement purposes." For many of the same reasons the FBI has also met its burden of establishing that the information was "compiled in the course of a criminal investigation" for purposes of subsection 7(D). Therefore, the court will uphold the redactions marked with Code (b)(7)(D)/(3).

#### (d) *Code (b)(7)(D)/(4)*

The FBI has made three redactions pursuant to Code (b)(7)(D)/(4). One redaction identifies the source and the other two deletions are of the entirety of a two-page document furnished by the source. Agent

Ogden attempts to justify these deletions by explaining that:

Certain confidential source material sought to be protected by the assertion of (b)(7)(D) is that emanating from private service-type organizations and organizations possessing financial-type data, which was furnished by them pursuant to either an implied or expressed assurance of confidentiality. These sources furnished to the FBI information readily available to them in the ordinary course of business with the understanding that it would be held in the strictest of confidence.

Declaration of Douglass C. Ogden at 31–32.

■ Having reviewed the material submitted *in camera,* the court finds that the excised portions would reveal the identity of a private commercial institution. Although courts in the past differed as to whether Exemption 7(D) applies to commercial institutions,[12] the 1986 revision of FOIA resolved this question by specifically including a "private institution," as a confidential source whose identity and information is exempt from disclosure. *See* 5 U.S. C.A. § 552(b)(7)(D) (West 1977 & Supp. 1987). Consequently, the court finds that the redactions made pursuant to Code (b)(7)(D)/(4) are proper.

### 3. *Exemption 7(E): Investigative Techniques*

FOIA's Exemption 7(E) permits the deletion of information that would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law...."[13] 5 U.S.C.A. § 552(b)(7)(E) (West 1977 & Supp. 1987). In attempting to justify the one redaction made pursuant to Exemption 7(E), Agent Ogden explains that:

This exemption has been asserted to withhold lawful investigative techniques not generally known to the public which continue to be successfully used today. The disclosure of these techniques could result in subjects of FBI investigations taking additional steps to avoid detection. Included in the concept of a "technique" are procedures used to achieve a particular or unique investigative goal. It is conceded that the individual elements of certain procedures are basic and commonly known; however, their use in concert with other elements of investigation and in their totality directed toward a specific investigative goal constitutes a "technique" which merits protection to insure its future effectiveness. It should be explained that this exemption was claimed only to protect the technique or procedure itself. Every effort was made to release the information developed through the use of the technique or procedure where disclosure would not compromise either the technique or the procedure. Any specific description of these techniques and procedures, or release of unique information, attainable only through the use of the technique, in the format of this declaration would disclose the technique and thus negate the effectiveness of the exemption.

Declaration of Douglass C. Ogden at 32–33.

■ Only one redaction was marked with Code (b)(7)(E)/(1) (type of technique utilized) and Code (b)(7)(E)/(2) (mechanics

---

**12.** *Compare Terkel v. Kelly,* 599 F.2d 214, 216 (7th Cir.1979) (Exemption 7(D) applied to commercial institutions), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980) *with Ferguson v. Kelly,* 455 F.Supp. 324, 325 (N.D.Ill.1978) (credit bureau cannot be "confidential source").

**13.** The former version of FOIA's Exemption 7(E) exempted matters which would "disclose investigative techniques and procedures...." Even though this was the version of 5 U.S.C.A. § 552(b)(7)(E) which was in effect when this lawsuit was filed, the current version of Exemp-

tion 7(E) governs this decision. Section 1804 of Pub.L. 99–570 provides that:

(a) The amendments made by section 1802 [amendment subsecs. (b)(7), (c) and (d) of this section] shall be effective on the date of enactment of the Act [Oct. 27, 1986], and shall apply with respect to any requests for records, whether or not the request was made prior to such date, and shall apply to any civil action pending on such date.

Freedom of Information Reform Act of 1986, Pub.L. No. 99–570, 1986 U.S.Code Cong. & Ad. News (100 Stat. 3207) 10A.

of the technique utilized). This is found in document 100–73463–10 in the following paragraph:

> While they [the FBI agents] were standing in front of the building a white male approached them and asked if he could be of any assistance. The agents used the pretext.... He [the white male] was told that the endorsers had used the address of 229 Cortland, San Francisco.

The redacted portion consists of a one and one-half line description of the "pretext" used by the agents. Nothing in Agent Ogden's declaration or in the document itself convinces the court that this information constitutes a "technique" which merits protection to insure its future effectiveness. *See Jaffe v. C.I.A.*, 573 F.Supp. 377, 387 (D.D.C.1983) (exemption extends to information regarding obscure or secret techniques but does not encompass ordinary procedures). It appears to be a garden variety ruse or misrepresentation. Accordingly, the court sees no reason why the information coded (b)(7)(E)/(1) & (2) should not be disclosed to the plaintiff. *See Ferguson v. Kelly*, 455 F.Supp. 324, 326 (N.D. Ill.1978).

## ORDER

For the reasons explained above, the court ORDERS that the defendant's Motion for Summary Judgment IS DENIED IN PART AND GRANTED IN PART in accord with the following provisions:

(1) Summary judgment is denied to the defendant and is granted in favor of the plaintiff in regard to the following information which has been improperly withheld and which the defendant must now produce:

| DOCUMENT | PAGE | IMPROPER REDACTION |
|---|---|---|
| 100–73463–7 | 1 | information redacted pursuant to Codes (b)(7)(C)/(2)(a) & (2)(b) |
| 100–73463–10 | 1 | information redacted pursuant to Codes (b)(7)(E)/(1) & (2) |
| 100–73463–10 | 2 | information redacted pursuant to Codes (b)(7)(C)/(2)(a) & (2)(d) |

(2) The defendant must disclose the improperly redacted information to the plaintiff within fourteen days of the date of this order.

(3) Summary judgment is granted in favor of the defendant and against the plaintiff as to all other information sought in the plaintiff's complaint.

IT IS FURTHER ORDERED that the plaintiff's claim for attorney fees IS DENIED because the plaintiff has not "substantially prevailed" on her claim. *See* 5 U.S.C.A. § 552(a)(4)(E) (West 1977 & Supp. 1987).

IT IS FURTHER ORDERED that this action IS DISMISSED without costs to either party.